[No. 7,032.—Department Two.]

## WILLIAM ELLIS ET AL. v. JOHN TONE ET AL.

ACTION FOR DIVERSION OF WATER—WATER RIGHTS—RIPARIAN PROPRIETORS — DAMAGES.—Action for damages for diversion of water from Mormon Slough, and consequent injury to plaintiffs' crops. Mormon Slough heads from and runs out of Calaveras River, and flows through the plaintiffs' land, and at the time of the diversion, in the year 1877, the plaintiffs were preparing to irrigate from the slough a crop of wheat and barley on their land, when the defendants (who were riparian proprietors on the river below) diverted the water by digging a ditch in the bed of the river, and damming the mouth of the slough. As appeared from the evidence in 1850 the waters of the river flowed into the slough only when the water was high; but from 1862, owing to the filling of the channel by mining debris, and the floods of that year, the channel of the river was so raised that in dry seasons nearly the whole of the water ran into the slough, and little or none into the river below. The defendants had

purchased four hundred miner's inches of water from the Mokelumne River, and turned the same into the Calaveras River, above the head of the slough, so as to flow down to their land. Verdict and judgment for plaintiffs. *Held,* The evidence was sufficient to justify the verdict.

ID.—ID.—ID.—ID.—INSTRUCTIONS—CHARGE.—The Court, of its own motion, instructed the jury as follows: "If you believe from the evidence, that the Mormon Slough was a natural stream of water, and the water would have flowed through their lands but for the diversion of the natural flow of that water by the defendants, the plaintiffs are entitled to a verdict for whatever damages they may have sustained to their crops, provided they were prepared to use the water, and had made the necessary preparations, as they have alleged in the complaint. The measure of damages in this case is the amount of injury to the crops described in the complaint, by the act of the defendants in diverting the natural flow of that water, if they did divert it. * * * If, however, the plaintiffs received no damage by any act of the defendants, or they did not divert the natural waters of this stream, to the injury of the plaintiffs, then your verdict will be for the defendants." It was objected to these instructions, that they assumed the fact of diversion; that they, in effect, directed the jury to find a verdict for damages to plaintiffs' crops, no matter from what cause the damages originated; and that they did not state the true rule, and gave no definite rule, for ascertaining the damages.

*Held,* The instructions were not objectionable on any of the grounds stated. The whole instruction of the Court should be taken together to arrive at its meaning, and no proper interpretation can be made on detached or isolated portions of it. The Court was not bound, of its own motion, to give any instruction as to the measure of damages, and its failure to do so was not error.

ID.—ID.—ID.—ID.—ID.—The Court refused an instruction of the defendants, to the effect that if the jury believed from the evidence, that the waters of the slough would not have flowed upon the plaintiffs' land, unless diverted by a dam on the land of a third party, and thereby made to flow over the lands of others without their consent, they should find for the defendant.

*Held,* In the absence of objection by the intermediate land-owners, the defendant could not make the objection for them.

ID.—ID.—ID.—ID.—ID.—Some of the allegations of the complaint not having been denied, it was not error for the Court to refuse an instruction to the effect that the burden of proof was on the plaintiffs to prove all the material allegations of their complaint.

ID.—ID.—ID.—ID.—ID.—CHANGE OF BED OF RIVER.—It was not error to refuse an instruction to the effect, that if the jury believed from the evidence that the water of the river would not have flowed into the slough but for the filling of the natural channel of the river, and the lowering of the natural channel of the slough since 1851, and that the defendants did no more than to cause the waters of the river to flow down its natural channel, they should find for the defendants.

ID.—ID.—ID.—ID.—ID.—The following instruction was refused: "The plaintiffs are not in any event entitled to recover damages for the diverting from Mormon channel any waters which were not the natural waters

of the Calaveras River nor for the diverting of any waters in excess of plaintiffs' just and fair proportion of the natural waters of the Calaveras River and Mormon Slough. If the jury believe from the evidence that the defendants, or any of them, caused to be turned in and run down the Calaveras River, above Mormon Slough, prior to the erection of plaintiffs' dams, and until the 1st of June, 1877, waters taken from the Mokelumne River; and if the jury further believe from the evidence, that the natural waters of the Calaveras River did not run down the river to the head of Mormon Slough in sufficient quantity to irrigate plaintiffs' land in the spring of 1877, and after plaintiffs had constructed their dams, then the jury should find for the defendants."

*Held*, The instructions were substantially given in the 3d, 4th, 7th, and 9th instructions (cited in the opinion).

ID.—ID.—ID.—ID.—ID.—The court instructed the jury that, "every riparian owner upon a stream has a right to use in a reasonable way the water of said stream for domestic purposes, for the irrigation of his land, or for propelling machinery if the quantity of water will warrant such use above the amount required for domestic purposes; and it was objected that, by this instruction, the right to use the water was qualified by the *reasonable manner* of its use, and not by any *reasonableness* in respect to *quantity*. *Held*, the instruction given embraced *quantity*, as well as manner.

ID.—ID.—ID.—ID.—ID.—It was not error to instruct the jury that "In the State of California the right to the use of water becomes fixed after five years' adverse enjoyment of the same." There was some evidence upon which the charge might be predicated; and, further, the plaintiffs were entitled to recover if there was a diversion—which was clearly proved and in fact not denied in the answer.

ID.—ID.—ID.—ID.—ID.—It was not error to refuse the request of the defendant for an instruction to the effect, that if the jury found for the plaintiffs, in determining what would have been the increase in the value of their crop by the irrigation, they should deduct from the market value of the increase the expenses of irrigating the land after building the dam, and the expenses of harvesting, threshing, sacking, and hauling such increase, and that it was incumbent on *the plaintiffs to prove affirmatively the amount of such expenses.* The portion of the instruction *italicized* would give the rule too broadly. If there was evidence in the cause from which the jury might have found the necessary deductions, they might have done so, whether the testimony was direct to the point, or consisted of facts from which they might have been inferred, whether affirmatively shown by the plaintiffs or in any other way. This portion of the instruction being erroneous, the whole was vitiated.

ID.—ID.—ID.—ID.—ID.—The court refused the request of the defendant for an instruction to the effect, that if the jury believed from the evidence that the bed of the head of Mormon Slough was lowered by the act of man, and that, were it not for such lowering of the bed, the natural waters of the Calaveras River would not have flowed down Mormon Slough, then the jury should find for the "*evidence*."

*Held*, the instruction was properly refused, even if the word "*defendant*," were inserted in the place of "*evidence*."

ID.—ID.—ID.—ID.—ID.—EVIDENCE.—The following question was asked to
several witnesses, over the objection of the defendants that the damage
sought to be established was speculative and uncertain: "What, in your
opinion, would the lands of the plaintiffs have produced in the year 1877,
if you could have procured water to irrigate it?" *Held,* the objection
was properly disallowed.

APPEAL from a judgment for the plaintiffs, and from an
order denying a new trial, in the Fifth District Court, County
of San Joaquin. BOOKER, J.

The following are the instructions asked by the defendants,
and refused by the Court, which are referred to in the syllabi,
and which are not set out in the opinion:

1. In this action the plaintiffs have sued the defendants to
recover damages claimed by plaintiffs for the alleged diver-
sion by defendants of the natural waters of the Calaveras
River from the Mormon Slough, running through plaintiffs'
land, and plaintiffs claim that, by such diversion of these nat-·
ural waters, they were prevented from irrigating their lands
as they claim they otherwise would have done, and that they
sustained damage by being prevented from irrigating their
grain-lands with their just and fair proportion of the natural
waters of the Calaveras River. In this action the burden of
proof is on the plaintiffs to prove all the material allegations
of their complaint, and unless they prove such material alle-
gations by the preponderance of the evidence, the jury should
find for the defendants.

2. If the jury believe from the evidence that the water
which flowed down the Calaveras River in the spring of 1877,
and after plaintiffs had constructed their dams, would have
flowed down the Calaveras River, and would not have flowed
down Mormon Slough, were it not for the filling in of the
natural channel of the Calaveras River, opposite the head of
Mormon Slough, since the year 1851 (if the jury believe from
the evidence that said natural channel was so filled in), and
were it not for the lowering of the natural bed of the head
of the Mormon Slough since 1851 (if the jury believe from
the evidence that such natural bed of the head of the Mor-
mon Slough had been so lowered).

And if the jury further believe from the evidence that de-
fendants did no more than to cause the waters of said Cal-
averas River to flow down the river, as they would have

flowed if the natural channel of the Calaveras River had not been filled in, and the natural bed of the head of the Mormon Slough had not been lowered, then the jury should find for the defendants.

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

11. If the jury believe from the evidence, that the head of the bed of Mormon Slough was lowered by the act of man, and that, were it not for such lowering of the head of the bed of Mormon Slough, the natural waters of the Calaveras River, which flowed down to the head of Mormon Slough, after plaintiffs had built their dams, would not have flowed down Mormon Slough, then the jury should find for the *evidence*.

*W. L. Dudley, J. A. Louttit, Terry & McKinne,* and *J. H. Budd,* for Appellants, cited Angell on Watercourses, 7th ed. § 90; *Gardner* v. *Newburgh,* 2 Johns. Ch. 166; *Wheatley* v. *Baugh,* 25 Pa. St. 528, 531; *Moore* v. *Browne,* 3 Dyer, 319 b; *Wadsworth* v. *Tillotson,* 15 Conn. 366, 373; *Shury* v. *Piggot,* Bulst. 339; *Tyler* v. *Wilkinson,* 4 Mason, 397; Code Civ. Proc. § 1870, div. 9; 1 Whart. Ev. § 439, and cases cited; *Muldowney* v. *Ill. Cen. R. R.,* 39 Iowa, 615; Sedgwick on Damages, 5th ed. 122; *Selden* v. *Cashman,* 20 Cal. 57; *Giles* v. *O'Toole,* 4 Barb. 263; *Blanchard* v. *Ely,* 21 Wend. 342; S. C., 34 Am. Dec. 250; 17 Wend. 161; *Page* v. *Hazard,* 5 Hill, 603; *Pollett* v. *Long,* 58 Barb. 35; *Griffen* v. *Colner,* 16 N. Y. 489.

*F. T. Baldwin* and *J. C. Campbell,* for Respondents.

The plaintiffs being riparian proprietors on Mormon Channel, had the right to have the water of said slough flow down naturally to their land, undiminished and unobstructed. (*Hill* v. *Newman,* 5 Cal. 445, 446; *John* v. *Jordan,* 2 Metc. Mass. 239; *Wheatley* v. *Baugh,* 25 Pa. St. 528; Angell on Watercourses, 106, § 97, and authorities there cited.

The plaintiffs had also acquired a right to have the water flow down said slough, by adverse uses, as against the defendants, who were riparian proprietors upon the Calaveras River below the source of the slough, for the reason that the water had so run in said slough for more than five years, and the right was acquired by adverse enjoyment of the water. (*Cran-*

*dall* v. *Woods*, 8 Cal. 144; *American Company* v. *Bradford*, 27 id. 366, 367; *Wright* v. *Howard*, 1 Sim. & Stu. 190.)

The defendants had not the right to remove from the bed of the river the sand and soil that had been gradually accumulating in it for years, or since the year 1853. (See 2 Bl. Com. 262; *Browne* v. *Kennedy*, 5 Har. & J. 194; S. C., 9 Am. Dec. 503; *Nichans* v. *Shepherd*, 26 Ohio St. 40–45; *Goodsell* v. *Lawson*, 42 Md. 348.)

The opinions of the witnesses as to the amount of grain plaintiffs' land would have produced if irrigated was properly admitted by the Court. Such evidence did not establish damages either remote or speculative. (*Hall* v. *Paiye*, Term 187 of Supreme Court; *Seamans* v. *Smith*, 46 Barb. 321, 322.)

THORNTON, J.:

This action was brought to recover of defendants damages for diverting water from Mormon Slough, a natural watercourse, by which plaintiffs were prevented from irrigating their growing crops of wheat and barley in 1877, and in consequence of which they suffered loss and damage.

On the trial a verdict was rendered in favor of plaintiffs for one thousand dollars, on which judgment was entered. Defendants moved for a new trial, which was denied, and they prosecute this appeal from the judgment and the order denying a new trial.

On the trial several exceptions were reserved to the rulings in relation to the admissibility and exclusion of evidence, and in giving and refusing instructions, which are indicated in a statement, which we are called on to consider and pass on.

It appears from the statement that the evidence proved, or tended to prove, that Mormon Slough or channel heads from and runs out of the Calaveras River to the east of Stockton, and about four miles in a north-easterly direction from plaintiffs' land, and flows thence in a south-westerly direction to the Stockton Channel, a distance of about twenty miles. The slough runs through the land of plaintiffs in two channels. The defendants own land on the Calaveras River, below the point where Mormon Slough runs out of the river. The slough is a natural watercourse, having a well-defined channel and banks. In 1850, and before the channel of the Cal-

averas was filled in by mining debris, it (the lower channel of
the river) was lower from six to four feet than the bed or
channel of the slough, so that the waters from the river did
not flow into the slough until the waters of the river had
risen from four to six feet. The channel of the river was so
filled by the debris brought from above, that when the water
was low, most or nearly all of it ran into or through the slough.
This has been the case since the heavy rains and great flood
of 1862 (unless prevented by artificial means), so that in dry
seasons, or the dry season of the year, nearly all of the water
ran into the slough, and during the whole or greater part of
the year, water was in the bed of the slough, while in the
latter part of the dry season little or none ran in the river
below the head of the slough. In the fall of 1876 and the
winter of 1877, the plaintiffs put in a crop of wheat and bar-
ley on the land described in the complaint, through which the
slough ran as above stated—one hundred acres in wheat and
twenty-five in barley. There was a good stand of grain in
April, 1877, and at that time it looked well. The plaintiffs
made arrangements to irrigate the land in crop in the spring
of 1877, by damming the north channel of the slough, so as
to make the water flow into the south channel, along which
the greater portion of their crop was sowed and was growing.
This arrangement was completed by plaintiffs in the month
of April, 1877, when their crops looked well. When their
arrangements for this purpose were completed, they found
that defendants had stopped the mouth of the slough by dig-
ging a ditch in the bed of the river, and damming the mouth
or exit of the slough from the river, so that the water was
compelled to flow down the river, instead of flowing, as had
been the case for about fifteen years, into the slough. In con-
sequence of this, the water was cut off from the slough, the
plaintiffs were unable to irrigate their growing crop, and the
product was small—only about four hundred and fifty bush-
els of wheat and about fifty bushels of barley. There was
also evidence tending to show that the defendants had pur-
chased, in 1877, of the Mokelumne and Campo Seco Canal
and Mining Company, four hundred miners' inches of water,
which were furnished to them during a period commencing
15th of April, 1877, and ending on the 1st of June of that

year. This water so furnished was taken from the south and middle forks of the Mokelumne River, and turned into the Calaveras River (above the head of Mormon Slough), down which river it was to flow to the lands of defendants, so that it might be used by them for irrigation. The quantity of rain which fell in the valleys around the lands referred to was small. At various times since 1852 dams have been placed in the head of the slough to turn the water from the slough, and cause it to run in the river; and in 1871 obstructions were placed in the river, below the head of the slough, to cause the waters to run into and through the slough.

The Court of its own motion instructed the jury as follows:

"This is an action brought by the plaintiffs here against these defendants, wherein the plaintiffs allege themselves to be the owners of certain lands described in the complaint, and allege that the Mormon Slough was a natural stream of water flowing through their lands. If you believe from the evidence that the Mormon Slough was a natural stream of water and the water would have flowed through their lands, but for the diversion of the natural flow of that water by the defendants, the plaintiffs are entitled to a verdict for whatever damages they may have sustained to their crops, provided they were prepared to use the water and had made the necessary preparations as they have alleged in the complaint. The measure of damages in this case is the amount of injury to the crops described in the complaint by the act of the defendants in diverting the natural flow of that water, if they did divert it. It is for you, after weighing and deliberately considering all the evidence in this case, to say what damages the plaintiff suffered.

"If you find for the plaintiffs, your verdict will be: 'We, the jury, find for the plaintiffs—' in such damages, according to the evidence, as you think the plaintiffs may be entitled to recover.

"If, however, the plaintiffs received no damage by any act of the defendants, or they did not divert the natural waters of this stream to the injury of the plaintiffs, then your verdict will be for the defendants."

It is objected to these directions of the Court, that it was

assumed by them as a fact that defendants had diverted the natural waters of Mormon Slough.

In our judgment, the directions referred to were not obnoxious to any such objection. The question of diversion or not by the defendants was in plain language left to the jury.

It is also urged that in the first part of these directions, it was stated to be law that if the plaintiffs were prepared to use the water, they were entitled to a verdict for whatever damages they may have sustained to their crops; that there was no qualification to this in that part of the instruction; that the instruction did not state the true rule of damages and gave no definite rule for ascertaining such damages.

There are two points made in the foregoing:

As to the first point, we do not think the Court instructed the jury as contended on behalf of defendants. The jury was not told that if the plaintiffs were prepared to use the water they were entitled to a verdict for whatever damages they may have sustained to their crops. But they were told that if the defendants diverted the natural flow of the water into the slough, the plaintiffs were entitled to a verdict for whatever damages they may have sustained to their crops, provided they (the plaintiffs) were prepared to use the water and had made the necessary preparations, as they alleged in their complaint. In this the Court did not err. The question of diversion was left to the jury, and the directions just referred to above were made to depend on the defendants having made such diversion, and that the plaintiffs were, if such diversion was found to have been made by defendants, entitled to a verdict, if they found that they were in the condition above stated.

It should be remarked here that the whole instruction on the part of the Court should be taken together to arrive at its meaning, and that no proper interpretation of the meaning of the Court could be made on detached or isolated portions of it.

As to the contention that there was no qualification of this part of the instruction, the defendants' counsel are mistaken, as we have pointed out.

The second point is that the instruction did not state the

true rule of damages, and gave no definite rule for ascertaining such damages.

The Court stated no rule of damages whatever, but in a general way. It was not bound to state such rule. It was not obliged to instruct the jury at all of its own motion. It was bound to pass on such propositions of law as were requested by either party to be given in charge to the jury, and give or refuse them, or give them in a modified form; but further than this the law did not require it to go. A failure to give any charge of its own motion was not error. If the counsel for defendants desired the Court to instruct the jury more particularly as to the rule of damages, they could have presented it in the form of a request. This was done during the course of the trial; as to that we will have some observations to make hereafter.

The eighth request of defendants, which was refused by the Court, and to which an exception was reserved, is in the following words:

"A riparian proprietor who takes water from a channel in which it naturally flows, has no legal right to take it beyond his own land before returning it to its natural channel. So, if the jury believe from the evidence that the natural waters of the Calaveras River and Mormon Channel would have flowed in the main Mormon Channel after plaintiffs had built their dams, unless diverted by said dams or other means, and if the jury further believe from the evidence that plaintiffs' dam in the main channel of Mormon Slough was not built on their land for the purposes of irrigation, but on the land of one Murphy, whose lands did not adjoin the land of plaintiffs, and unless the jury believe from the evidence that the proprietors of intermediate lands consented to the diversion of said natural water from the main channel of the Mormon Slough by the dam placed therein by plaintiffs (and such consent should be shown by the evidence), then the jury should find for the defendants."

And it is urged that in this there was error, because plaintiffs did not show the consent of the intermediate owners of land referred to in the request.

As to this, it is only necessary to say that no intermediate landowner is here objecting to plaintiffs' bringing the water

through their lands. As they made no objection, we can not see that the defendants could make the objection for them or either of them. No objection appearing, it is proper to conclude that no one of such owners ever objected.

The Court did not err in refusing requests of defendants numbered one and two. As to the material allegations of the complaint referred to in request *one*, they were not all denied. The allegation that the water was diverted by dams and obstructions placed there by defendants, was not denied.

The defendants requested the Court to instruct as follows:

"The plaintiffs are not in any event entitled to recover damages for the diverting from Mormon Channel any waters which were not the natural waters of the Calaveras River, nor for the diverting of any waters in excess of plaintiffs' just and fair proportion of the natural waters of the Calaveras River and Mormon Slough.

"If the jury believe from the evidence that the defendants, or any of them, caused to be turned in and run down the Calaveras River, above Mormon Slough, prior to the erection of plaintiffs' dams, and until the 1st of June, 1877, waters taken from the Mokelumne River; and if the jury further believe from the evidence that the natural waters of the Calaveras River did not run down the river to the head of Mormon Slough in sufficient quantity to irrigate plaintiffs' land in the spring of 1877, and after plaintiffs had constructed their dams, then the jury should find for the defendants."

The Court did in effect charge all these propositions in giving the following requests asked by defendants:

"Third. In no event were the plaintiffs entitled to the use as riparian proprietors of any water except the water that would naturally flow down the Calaveras River and the Monmon Slough, and if the jury believe from the evidence that any water was turned in the Calaveras River above the head of Mormon Slough, at the request of the defendants or any of them, from ditches which drew their water from Mokelumne River, then the plaintiffs can not recover any damages for being deprived of the use of the water that was so turned in the Calaveras River.

"Fourth. The plaintiffs had not the legal right to use for the purpose of irrigation all of the natural waters of the

Calaveras River which flowed down the Calaveras River and Mormon Slough. The other riparian proprietors of land on the Mormon Slough had a legal right to use such natural waters equally with plaintiffs. The plaintiffs had no legal exclusive right to use such natural waters for the purpose of irrigation in excess of their just and fair proportion thereof.

"Seventh. If none of the natural waters of the Calaveras River would have flowed down Mormon Channel after plaintiffs had erected their dams; if the natural bed of the Calaveras River at the head of Mormon Slough had not been filled up (if filled up), and the natural bed of the head of Mormon Slough had not been lowered (if lowered), then the jury should find for the defendants.

"Ninth. If the jury believe from the evidence that the defendants, or any of them, caused to be turned into the Calaveras River, above the head of Mormon Slough, waters taken from the Mokelumne River, and such waters continued to flow down the Calaveras River from the middle of April until the 1st of June, 1877, then the plaintiffs can not recover because the defendants prevented them from using such waters."

An exception was reserved to the following instruction asked by the plaintiffs:

"Every riparian owner upon a stream has a right to use in a reasonable way, the water of said stream for domestic purposes, for the irrigation of his land, or for propelling machinery, if the quantity of water will warrant such use above the amount required for domestic purposes."

As to this, the counsel for defendants said "the plaintiffs were entitled to the *reasonable use* of the natural waters of the Mormon Channel. By reasonable use is meant *reasonable quantity* as well as *reasonableness* in the *manner* of its use. The vice of the instruction is that the right to use the water is qualified by the *reasonable manner* of its use, and not by any *reasonableness* in respect to the *quantity* used."

In our judgment the criticism of the learned counsel is not warranted. It savors of hypercriticism. The instruction as given embraced *quantity* as well as manner.

We do not see that any injury was done to the defendants

in giving the instruction eight, asked by the plaintiffs. It was in these words:

"In the State of California the right to the use of water becomes fixed after five years' adverse enjoyment of the same."

There was some evidence, in our view, on which such a charge might be predicated. Further, in our opinion, the plaintiffs were entitled to recover if there was a diversion, which seems to have been clearly shown. In fact, the diversion was not denied in the answer, so that the charge objected to was immaterial and did no injury.

The Court refused the following request asked by defendants:

"If the jury believe from the evidence and under the instructions of the Court that the plaintiffs had the legal right to the use of the natural waters of the Calaveras River, which would have flowed down the river, and down Mormon Slough in the spring of 1877, unless the defendants had diverted the same from said Mormon Channel, then the jury are to consider and determine from the evidence:

"1. What amount of plaintiffs' grain land, if any, plaintiffs' just and fair proportion of such natural waters would have irrigated after they had erected their dam.

"2. What would have been the increase, if any, of the value of their grain crop that year by such irrigation.

"In determining what would have been the increase of such value, if any, the jury are to deduct from the market value of the increase, if any, of the amount of grain from such irrigation, the expenses of irrigating the land after the building of the dams, and the expenses of harvesting, threshing, sacking, and hauling to market such increase, if any, in the amount of grain.

"And it was incumbent on the plaintiffs to prove affirmatively the amount of such expenses."

The object of the defendants in this request was to state the correct rule of damages in the case. Granting that the rule was correctly stated in the request, the portion of it that it was incumbent on the plaintiffs to prove affirmatively the amount of such expense, would give the rule too broadly. If there was evidence in the cause, from which the jury might

have found the necessary deductions, they might have done so, whether the testimony was direct to the point or consisted of facts from which they might have been inferred, whether affirmatively shown by the plaintiffs or in any other way. For these reasons we do not think the Court committed an error in refusing to charge as requested. This portion of the request being erroneous, the whole was so vitiated that it was no error to reject it entirely. (*Shea* v. *P. & B. V. R. R. Co.*, 44 Cal. 429.)

Further, in relation to this matter, taking the whole testimony into consideration and the verdict of the jury, we think the jury did not find a greater amount of damages, than the plaintiffs were entitled to recover, under the rule as requested to be charged.

The eleventh request of defendants was properly refused even if the word "*defendants*" was inserted in place of the last word "*evidence*" in the request.

On the trial of the cause the plaintiff, Susan Potter, testified that she had farmed land since she was a child; that she had known lands of the same kind of soil as the land of plaintiffs, and in its neighborhood, irrigated in the years 1872 and 1877; that she had irrigated one hundred acres of this same land in 1871, and had cultivated the same land since 1871. Counsel for plaintiffs then put to her this question:

"What, in your opinion, would the land of plaintiffs have produced in the year 1877, if you could have procured water to irrigate it, as you made preparations to do?"

The counsel for defendants objected to the question as incompetent, that the damage sought to be established was speculative and uncertain, and not the proper measure of damages.

The Court overruled the objection and defendants excepted.

The question was competent. The damage sought to be established by it was direct and not of a speculative or uncertain character. No measure of damages was specified in the question. The objection was properly disallowed. There was no objection made to the competency of the witness to give an opinion. The evidence showed her to be competent, in our judgment.

Substantially the same question was put to other witnesses,

viz.: William Ellis, William Prather, Thomas Flood, and Willis Prather. The same objection was made as regards each one of these witnesses, and the ruling was the same. The Court admitted the testimony, overruling the objections of defendants, and exceptions were reserved. There was no error in the ruling of the Court. The opinions of the witnesses who were competent, were admissible on the issue of damages.

The evidence, in our opinion, was sufficient to justify the verdict. We find no error in the record, and the judgment and order are affirmed, and it is so ordered.

SHARPSTEIN, J., and MYRICK, J., concurred.