DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF CALIFORNIA.

[No. 15250.   Department One.—December 5, 1894.]

CLARA FELIZ ET AL., APPELLANTS, v. FRANK FELIZ
ET AL., RESPONDENTS.

ADVERSE POSSESSION—TENANCY IN COMMON—NOTICE—PRESCRIPTION.—
When a tenant in common is in possession of the whole premises, and
exercises acts of ownership of an unequivocal character, overt and no-
torious, and of such a nature as by their own import to impart informa-
tion and notice to the other cotenants that an adverse possession and
disseisin are intended, his possession is adverse, and if continued for
five years, with payment of all taxes levied and assessed on the land
after April 1, 1878, will vest a title by prescription.

ID. — INSTRUCTIONS — CONSTRUCTION OF CHARGE TO JURY.—Instructions
upon the subject of adverse possession by a tenant in common are to be
taken together and considered as a whole; and if, when so considered,
the law as to adverse holding between such tenants is correctly stated,
the fact that one of the instructions taken by itself is not complete upon
that subject will not vitiate the charge to the jury, but the jury will
be deemed to have properly applied the law as stated by the charge
taken as a whole.

ID.—RESIDENCE OF COTENANT IN FAMILY OF ADVERSE POSSESSOR. — The
fact that a nephew of the adverse possessor, who is also a cotenant,
continues to reside thereon as a member of the family of the cotenant,
who is in adverse possession, does not prevent the possession of the lat-
ter from being adverse, but the undisputed hostile acts of adverse pos-
session by him would be more readily brought to the notice of the co-
tenant residing in his family, and afford him an opportunity of asserting
his claim in opposition thereto.

ID.—DIRECTING JURY AS TO FORM OF VERDICT—LIMITATION OF RECOVERY
NOT ASKED FOR.—The court has the right to instruct the jury as to the
form of their verdict, and when no question is made in the answer or at
CV. CAL.—1

the trial as to the right of plaintiffs to recover the whole premises, if entitled to recover at all, the defendants cannot, after an adverse verdict, insist that there should have been a limitation in the instructions as to the right of recovery of plaintiffs with respect to which the defendants did not ask for any instructions.

ID.—EVIDENCE—STATEMENTS FROM ASSESSOR'S OFFICE.—Statements from the assessor's office not signed by the party against whom they are offered, nor shown to have been made under his direction, or with his knowledge, are not competent evidence against him or parties claiming under him.

ID.—ESTATES OF DECEASED PERSONS—PRESCRIPTIVE TITLE OF HEIR—SUBSEQUENT INVENTORY AND APPRAISEMENT—PETITION FOR HOMESTEAD.— An inventory and appraisement of the estate of the deceased ancestor, and a petition by the widow for a homestead, made and filed after one of the heirs has acquired a title by prescription as against all other heirs, can have no effect in determining whether the possession of the land of the decedent by such heirs was adverse from the time of the death of the ancestor.

APPEAL from an order of the Superior Court of Santa Cruz County granting a new trial.

The facts are stated in the opinion of the court.

*Joseph H. Skirm,* for Appellants.

The first and second instructions mentioned correctly state the law as to the subject to which they relate, and a new trial should have been denied. (*Winterburn* v. *Chambers,* 91 Cal. 170; *Oglesby* v. *Hollister,* 76 Cal. 136; 9 Am. St. Rep. 177; *Bath* v. *Valdez,* 70 Cal. 350; *Unger* v. *Mooney,* 63 Cal. 586; 49 Am. Rep. 100.) Instructions are to be considered as a whole, and it is sufficient if, taken together, they state the law of the case correctly. (*Townsend* v. *Briggs,* 99 Cal. 481; *People* v. *Etting,* 99 Cal. 577; *Stephenson* v. *Southern Pac. Co.,* 102 Cal. 143; *Doty* v. *O'Neil,* 95 Cal. 244; Angell on Limitations, secs. 389, 390; *School District* v. *Benson,* 31 Me. 381; 52 Am. Dec. 618.)

*E. Spalsbury,* and *Charles B. Younger,* for Respondents.

The court erred in giving plaintiffs' seventh instruction, that if the verdict be for the plaintiffs it will be that the jury find for the plaintiffs for the recovery of

the possession of the premises first described in the complaint, as, under this instruction, the verdict, if for the plaintiffs, must have been for the whole of said last-mentioned premises, and against both the defendants. (*Mattingly* v. *Roach*, 84 Cal. 207; *Wood* v. *Tomlinson*, 53 Cal. 720.) The court erred in its second instruction as to adverse possession, as, under such instruction, if Miguel Feliz held possession for five years subsequent to the death of Juan Jose Feliz, said possession extinguished the right of every cotenant therein, and vested in Miguel Feliz a perfect title thereto, notwithstanding such cotenants had no notice of the existence of an intent to claim adverse possession of the land; but such is not the law. (*Miller* v. *Myles*, 46 Cal. 535; *Packard* v. *Johnson*, 51 Cal. 545; *Gage* v. *Downey*, 94 Cal. 241.) An erroneous instruction is not obviated by one subsequently given, wherein the law applicable to the case is properly presented. (*Sappenfield* v. *Main St. etc. R. R. Co.*, 91 Cal. 48.) The jurors are bound to accept all the instructions given them by the court as correct, and when two instructions are inconsistent or contradictory, it is impossible to tell which instruction was adopted by them in reaching a verdict, and such verdict must be vacated. (*Brown* v. *McAllister*, 39 Cal. 573; *Haight* v. *Vallet*, 89 Cal. 245; 23 Am. St. Rep. 465; *Sappenfield* v. *Main St. etc. R. R. Co.*, 91 Cal. 48.)

HARRISON, J.—The plaintiffs recovered judgment against the defendants for possession of certain lands in the city of Santa Cruz, and a motion for a new trial having been made by the defendants, was granted by the court "upon the sole ground" that the court erred in giving certain instructions to the jury. From this order the plaintiffs have appealed.

The lands in controversy are included in the tract granted by Congress to the town of Santa Cruz July 23, 1886, and were conveyed by the town to Juan Jose Feliz, March 4, 1867. Juan Jose Feliz died intestate in June, 1871, leaving several heirs at law, but administration

upon his estate was not had until April, 1885, when the defendant, Frank Feliz, was appointed administrator. Miguel Feliz, one of the sons of Juan Jose Feliz, lived for many years on a portion of the premises in controversy, claiming them as his own, and, after his father's death, went into occupancy and possession of the entire tract of land in controversy, and held possession of the same until July, 1885, when he was ejected therefrom by the defendants. The plaintiffs are children of Miguel, and their title to the premises is derived by means of conveyances from him. September 19, 1874, the widow of Juan Jose Feliz, who, after the death of her husband, continued to reside on the premises with her son Miguel, made a conveyance of the entire tract to him, and thereafter continued to reside with him as a member of his family until he was dispossessed thereof by the defendants. Miguel also received conveyances of the premises from others of the heirs of his father, but not from all of them.

The court gave to the jury the following instructions:

"1. The jury are instructed that, when a cotenant enters and exercises acts of ownership upon lands in which he has a cotenant, the intent with which such acts are performed must in all cases determine whether or not they amount to an ouster, and when a tenant in common is in possession and exercises acts of ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information, and give notice to the other cotenants that an adverse possession and a disseisin are intended to be asserted against them, then the possession of such tenant in common is adverse; and if such a possession is actual, adverse, open, notorious, and exclusive, and continuing for the period of five years, it extinguishes the right of the party having the true title, and vests a perfect title in the adverse holder, provided that such possession existed for five continuous years before the first day of April, 1878; but if such possession did not exist for five continuous years before the first day of April, 1878, then

the person so in possession of the land must have paid
all the taxes, state, county, or municipal, which had
been levied and assessed upon such lands during all of
said period of five years subsequent to the first day of
April, 1878, in order to vest a perfect title in such
adverse holder.

" 2. The jury are instructed that an adverse, open,
notorious, exclusive, and continued possession for the
period of five years extinguishes the right of the party
having the true title, and vests a perfect title in the
adverse holder, if such possession had so existed for
five years before the first day of April, 1878; and if such
possession existed for five years, and was not completed
before said first day of April, 1878, then the person so
in possession of the land must have paid all the taxes,
state, county, or municipal, which had been levied and
assessed upon such land during the whole of said last-
named period of five years subsequent to the first day
of April, 1878."

There was no error in giving these instructions.
(*Unger* v. *Mooney,* 63 Cal. 586; 49 Am. Rep. 100; *Bath*
v. *Valdez,* 70 Cal. 350; *Oglesby* v. *Hollister,* 76 Cal. 136;
9 Am. St. Rep. 177; *Winterburn* v. *Chambers,* 91 Cal.
170.) The plaintiffs based their right of recovery upon
an adverse possession of the lands in controversy by
Miguel, while it was claimed on the part of the defend-
ants that, as he was a codefendant with the other heirs
of his father, his possession inured to their benefit, and,
for the purpose of meeting this contention, evidence
was given on behalf of the plaintiffs tending to show
that the possession of Miguel was accompanied by acts
hostile to, and inconsistent with, any claim of his co-
tenants, and with such open disavowal of their claim
as to give them notice that his possession was adverse,
and thereby constituted an ouster sufficient to set the
statute of limitations running. It was shown that, upon
the death of his father, he entered into the occupancy of
the premises, caused them to be inclosed with a fence,
cultivated them himself during many years, and in other

years rented them to others and appropriated the entire rents to himself, claimed the land as his own, paid the taxes thereon, took conveyances purporting to be of the entire tract, and executed a mortgage thereon to secure his own debt. These were acts of ownership on his part, inconsistent with a recognition of the claim of any other to the land, and were of sufficient notoriety to have presumptively been brought to the notice and knowledge of his cotenants, and the jury were authorized to determine from these acts that they were notified that he claimed the land as his own to the exclusion of his cotenants, and thereby ousted them therefrom. Such possession, when continued for five years, accompanied with the payment by him of the taxes thereon, extinguished the right of his cotenants therein.

The second of the foregoing instructions is substantially a repetition of the latter part of the first, and while it gives in general terms the rule of law necessary to establish a title by adverse possession, and, if taken by itself, would not be complete when such question is between cotenants, yet it is to be read in connection with the prior instruction in which the rule of adverse holding between cotenants was properly given to the jury. The instructions given to a jury by the court are to be considered as a whole, and if, when so considered, the law is correctly stated as applicable to the case before the court, the jury will be deemed to have properly applied the law as thus stated. It is not to be assumed that the jury have disregarded one part of the instruction any more than another, but they will be assumed to have given full consideration to each and every proposition of the law that the court has laid before them. (*Stephenson* v. *Southern Pac. Co.*, 102 Cal. 143.) There is nothing inconsistent in the two instructions, nor does either of them incorrectly state the law. The second instruction states the effect of adverse possession upon the claim of the holder of the record title, while the former states what constitutes adverse possession as against a cotenant. Similar observations may be made

with reference to the second instruction, and its relation to the fact that prior to 1866 the title to the land was in the United States. The jury were instructed that prior to July 23, 1866, there could have been no adverse possession of the land, and they must be deemed to have given this rule its proper consideration in connection with the other instruction upon the question of adverse possession.

The fact that his nephew, Antone Feliz, continued to reside with Miguel upon the premises, did not prevent Miguel's possession from being adverse. It does not appear that Antone questions the sufficiency of the ouster, or the adverse holding by Miguel, nor do the appellants claim that it could be questioned by him, or on his behalf, upon any other ground than that he continued to reside with Miguel as a member of his family, after Miguel had entered into possession of the land. Merely being a member of Miguel's family would not necessarily imply that Antone was in such possession of the land as to prevent Miguel from acquiring title by adverse possession, or that his relation to the land, or to its possession by Miguel, was such as to prevent the acts of Miguel from constituting adverse possession against him; and it may be added that by being on the premises the acts of Miguel by which his hostile claim was asserted, would more readily be brought to his notice, and give him an opportunity of asserting his own claim in opposition thereto. Miguel's mother ceased to be his cotenant by her conveyance to him in 1874.

In giving to the jury the different forms of verdict which they might find, the court said to them: "The jury are instructed that, if their verdict be in favor of the defendants, the form of their verdict will be: 'We, the jury, find for the defendants'; if for the plaintiff, their verdict will be: 'We, the jury, find for the plaintiffs for the recovery of the possession of the premises first described in the complaint, and for the sum of —— dollars, damages for the withholding thereof by said defendants from said plaintiffs.'" It is now claimed that this was in-

structing the jury with respect to a matter of fact, and required the jury to give their verdict for the whole of the premises, and against both of the defendants, whereas it had been shown that Juan Jose Feliz had, prior to his death, conveyed a certain part of the premises to one Kirby. There was, however, no evidence that Kirby had ever been in possession of the land at any time after the death of Feliz. The court was not instructing the jury with reference to any contested matter of fact, but was merely directing them in regard to the "form" of their verdict. The defendants had not claimed in their answer any limitation upon the amount of land that the plaintiffs might recover, nor did they ask for any instructions with reference to such limitation. There was evidence before the jury tending to show the plaintiffs' right of recovery for the whole of the first parcel of land described in the complaint; and if the defendants had considered that there was also evidence which tended to limit the plaintiffs' right of recovery to a portion of this tract, they should have asked from the court an instruction to the jury to that effect. But they were not at liberty to go to the jury upon the proposition that the plaintiffs had failed to establish any right of recovery, and after receiving an adverse verdict, insist that the jury should have considered whether the evidence did not require a limitation upon the extent of this recovery in a respect not brought to their attention. There was evidence from which the jury were authorized to find against both of the defendants. Both of them had united in the ejection of Miguel from the land, and Majors testified that since that time both of them had been in possession of the land. Whether the defendant Maria had been in her grandmother's employ as a nurse in her lifetime was immaterial. Her grandmother had died long before the commencement of the action, and it was not claimed that her relation to her codefendant was at any time that of his servant or employee.

There was no error in excluding from evidence certain "statements" from the assessor's office. The state-

ments were not signed by Miguel, nor was it shown that they were made under his direction, or with his knowledge. Neither does it appear that they were accompanied by an affidavit or oath purporting to have been made by him. The inventory and appraisement made in the estate of Juan Jose Feliz, in the year 1885, as well as the petition for a homestead by his widow in that year, could have no effect in determining whether the possession of the land taken by Miguel in 1871 was adverse.

The order is reversed.

GAROUTTE, J., and VAN FLEET, J., concurred.