[Civ. No. 164. First Appellate District.—February 21, 1906.]

MARY A. HAYDEN, Respondent, v. CONSOLIDATED MINING AND DREDGING COMPANY, Appellant.

LANDLORD AND TENANT—INJURY TO LEASED DITCH—COVENANT OF LESSEE TO REPAIR—INSTRUCTIONS READ TOGETHER—JURY NOT MISLED.—Where a lease of land to which a ditch was appurtenant contained a covenant of the lessee to keep the ditch open and in repair at his sole expense, instructions in an action by the lessor to recover damages by a third party for destruction of the ditch, to the effect that the lessor could only recover damages for permanent injury to the reservoir, and that the lessee would be entitled to recover the cost of rebuilding and replacing the portions of the ditch destroyed, when read together with another instruction to the effect that if the jury should find that any injury to the ditch so permanently injured and destroyed it that it could not be rebuilt or replaced as it originally existed, the lessee would not be bound by his covenant to repair it, and the plaintiff may recover damages therefor, disclose no inconsistency in the instructions that could mislead the jury.

ID.—OPTION OF LESSEE TO PURCHASE—RECOVERY OF DAMAGES BY OWNER.—An option to purchase conferred in the lease upon the lessee merely leaves him free to purchase the leased property or

not, according to his will, and the mere fact that he might own the property at some subsequent time cannot prejudice the right of the present owner of the realty to recover damages for a lasting injury to the property, which the lessee may never acquire.

APPEAL from a judgment of the Superior Court of Siskiyou County, and from an order denying a new trial.  J. S. Beard, Judge.

The facts are stated in the opinion of the court.

Gillis & Tapscott, for Appellant.

Coburn & Collier, for Respondent.

McLAUGHLIN, J.—Respondent was the owner of a tract of farming land in Siskiyou county, appurtenant to which was a ditch known as the "Alger Ditch," used for conveying water from Scott river to and upon said land for purposes of irrigation.  The defendant constructed a dam in the channel of the river near the head of this ditch, thereby causing the waters of the stream to flow against one of its banks and into the head of the ditch.  As a result, about one-half mile of the ditch was washed away, necessitating the construction of a flume for this entire distance.  This action was brought to recover $5,000 damages, thereby sustained.  The jury found for plaintiff, and assessed the damages at the sum of $550. Judgment was entered accordingly, and the defendant appeals from the judgment and from an order denying his motion for a new trial.

At the time the ditch was washed away, one Oltman was in possession of the land and ditch, under a lease which included an option to purchase the property.  This lease contained a covenant binding the lessee to keep the ditch open and in repair at his sole expense and without charge to respondent.  The court, after repeatedly instructing the jury that the plaintiff was only entitled to recover damages for permanent injury to "her inheritance" or "reversionary interest in the property," and that the lessee would be entitled "to recover against the defendant in respect to the value of his possessory interest and unexpired term in the premises," continuing, said: "But if you further find from the evidence that the lease to Charles Oltman contains a covenant to repair the Alger ditch, then

such covenant requires that the lessee, Charles Oltman, shall keep the ditch in as good repair as when he received it under his lease; and if destroyed by the defendant, he, the said Charles Oltman, would be required to replace and rebuild the the portion or portions of said ditch so destroyed. And he, the said Charles Oltman, would be entitled to recover from the defendant the cost of rebuilding and replacing the portion or portions of said ditch, if any, so destroyed by defendant." In the same connection and immediately following said instruction, which was numbered 9, the court further instructed the jury as follows: "If you find from the evidence in this case that the damages alleged in the complaint were in fact inflicted by the defendant, and that any portion of the said ditch was so permanently injured and destroyed as that it could not be rebuilt or replaced in the manner in which it originally existed, then the lessee would not be bound, under his covenant, to repair such permanent injuries, and the plaintiff may recover herein for such damages." The appellant does not assail the correctness of the whole or any portion of the charge of the court, but relies solely on the point that the jury must have ignored or refused to follow instruction No. 9 above quoted. It is argued that, as the lease contains a covenant requiring the lessee to keep the ditch in repair, this instruction absolutely precluded a recovery by plaintiff, for or on account of any injury to such ditch occurring during the continuance of the lease. Respondent answers this argument by saying that the instruction on this branch of the case must be read and construed together, and that if this course is pursued, the verdict cannot be held violative of the charge of the court, or of the instruction in question. Appellant replies by reiterating the argument first advanced, and adding that there is such an irreconcilable conflict between the two instructions above quoted that one cannot be followed without ignoring the other. It is well settled that instructions given by the court must be read together as a whole, and are sufficient if, when so read, they appear to cover the whole case, and state correctly the law applicable thereto. (*Nichol* v. *Laumeister,* 102 Cal. 661, [36 Pac. 925]; *Ellis* v. *Tone,* 58 Cal. 297; *People* v. *Kennedy,* 55 Cal. 202; *Feliz* v. *Feliz,* 105 Cal. 6, [38 Pac. 521]; *Monaghan* v. *Rolling Mill Co.,* 81 Cal. 193, 194, [22 Pac. 590].)

There can, however, be no question that, where two instructions are contradictory in essential particulars, the judgment

must be reversed.   (*Brown* v. *McAllister,* 39 Cal. 573; *Chides-ter* v. *Consolidated People's Ditch Co.,* 53 Cal. 56; *Haight* v. *Vallet,* 89 Cal. 249, [23 Am. St. Rep. 465, 26 Pac. 897]; *Sappenfield* v. *Main St. R. R. Co.,* 91 Cal. 48, [27 Pac. 590].)   In applying the rule last stated it must be borne in mind that, although some of the instructions may in slight respects be repugnant to each other, if it appear that the jury could not have been misled thereby, a new trial will not be granted. (*Carrington* v. *Pacific Mail S. S. Co.,* 1 Cal. 476; *People* v. *Salorse,* 62 Cal. 144; *People* v. *Turcott,* 65 Cal. 128, [3 Pac. 461]; *People* v. *Chun Heong,* 86 Cal. 334, 335, [24 Pac. 1021]; *Edwards* v. *Wagner,* 121 Cal. 378, [53 Pac. 821]; *People* v. *Cleveland,* 49 Cal. 580.) . And it must further be remembered that "the meaning of the court below cannot be fairly arrived at by a partial view of what the jury was told was the law by which they should be governed.   All that was said to them in relation to the matter should be considered." (*People* v. *Kennedy, supra; Ellis* v. *Tone, supra; Monaghan* v. *Rolling Mill Co., supra; Feliz* v. *Feliz, supra.*)   In construing the charge of the court, it must be viewed in the light of common understanding, and the practical administration of justice should not be defeated by a too rigid adherence to close and technical analysis of the whole or any part thereof.   (*People* v. *Alsemi,* 85 Cal. 435, [24 Pac. 810]; *People* v. *Bruggy,* 93 Cal. 476, [29 Pac. 26]; *Hanson* v. *Stinehoff,* 139 Cal. 173, [72 Pac. 913]; *Thomas* v. *Gates,* 126 Cal. 8, [58 Pac. 315]; *Stephenson* v. *Southern Pacific R. R. Co.,* 102 Cal. 150, [34 Pac. 618, 36 Pac. 407]; *People* v. *Gibson,* 106 Cal. 474, [39 Pac. 864].) "Jurors may be assumed to have ordinary intelligence and good sense." (*Ballou* v. *Andrews Banking Co.,* 128 Cal. 567, [61 Pac. 102].)   This being true, it follows that the crucial test to be applied in solving the problem before us must be whether a man of ordinary intelligence reading the charge intended for his guidance would be unable to ascertain its meaning as a whole, by reason of inherent contradictions creating confusion and doubt in his mind touching his duty as a juror.   Taking the charge of the court in the case at bar by its four corners, and placing a reasonable unstrained construction upon each of its several parts, as viewed in the light of the general context and the relation of each part to the other, we feel certain that such a man could ascertain the meaning

of the court, and could not have been misled as to his duty as a juror.

If instruction No. 9 stood alone, the conclusion contended for by appellant might be inevitable, but it is qualified by what precedes and follows it. If the first word of instruction No. 10 had been preceded by the word "but," or followed by the word "however," there could be no doubt as to the intention and meaning of the court. And we think the charge as it stands is fairly and reasonably susceptible of the interpretation that must have been placed upon it, had either or both of such words been so inserted. Instructions numbered 7 and 8 contain repeated admonitions to the effect that the damages awarded to the plaintiff must be confined to the permanent injury and damage to the property; that is, to injury inflicted upon "her inheritance" or "reversionary interest" therein. The jurors were then informed that she could not recover for any injury to Oltman's possession or enjoyment of the property. Instruction No. 9 informed the jury that *it was the duty of the lessee to replace and repair any portion* of the ditch injured or destroyed, and that he could recover the necessary expenses incurred in doing so from the defendant. In the next instruction, almost in the same breath, and as a continuation of the subject matter embraced in the three preceding instructions, they were given to understand that if the ditch was "so permanently injured and destroyed that it could not be rebuilt or replaced in the manner in which it originally existed," the lessee would not be "bound under his covenant to repair such permanent injuries, and the plaintiff may recover herein for such damages." Surely, the jury could not fail to understand from this that the lessee was only bound to do and could only recover for doing that which it was in his power to do. Surely they must have gathered from this charge that, if the injuries were permanent and irreparable, he was released from performing impossibilities by the law, which was part and parcel of his covenant. (Civ. Code, sec. 3531.) Viewing the whole charge through nonpartisan eyes, they certainly must have been able to comprehend from its context that the plaintiff could only recover for injuries to the property so permanent and irreparable in their nature that the lessee could not repair or replace the ditch in such manner as to avoid continuing and lasting injury to the property, and con-

sequent damage to its owner. ''To tell the jury that if they believe from the evidence that certain facts exist, they should find a certain way, is not a positive instruction to find a certain way.'' (*Eades* v. *Trowbridge*, 143 Cal. 29, [76 Pac. 714].) And as every presumption and intendment must be indulged in favor of the verdict and judgment, we are bound to assume that there was evidence to justify the jury in finding, and that they did in fact find, that the injury was of such a permanent and irreparable character that the plaintiff was damaged to the extent indicated by the verdict.

A well-deserved compliment to the attorneys for the appellant is involved in the statement that our labors have been minimized and brightened by the direct, straightforward, and lawyer-like way in which the point relied upon for reversal was segregated and presented.

The judgment and order are affirmed.

Chipman, P. J., and Buckles, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 22, 1906, and the following opinion was rendered thereon:

McLAUGHLIN, J.—In the petition for a rehearing it is earnestly contended that the judgment which was here affirmed must result in grave injustice to appellant, in the event that the lessee Oltman should voluntarily purchase the property under the option contained in the lease. It is said that in such event the purchaser could also recover for any permanent injury to the property caused by the negligence of which plaintiff complains, thus subjecting appellant to a double liability on account of the same omission or act. While the rights of the lessee cannot be determined in an action to which he is not a party, we cannot see how the fact that he might become a purchaser at some future date could affect the right of the owner of the property when the permanent injury was inflicted, to recover for any lasting injury to her property while it remained such. The option to purchase left Oltman free to act according to his will and the mere fact that he might own the property at some subsequent time cannot prejudice the right of the present owner to recover for a tort resulting in

lasting injury to realty which she now holds and he may never acquire.

Rehearing denied.

Chipman, P. J., and Buckles, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 20, 1906.