McNULTY, Judge.
Plaintiffs-appellants appeal a final summary judgment for the defendants in an action for the recovery of damages to certain real property. We reverse and remand.
In the order granting summary judgment the trial court found the facts to be without controversy as set forth hereafter and the record fully supports this. On October 19, 1974, defendant-appellee Lois Thomas operated an automobile owned by defendant-ap-pellee Raymond Thomas so as to cause it to collide with a building situated on certain real property in Leesburg, Lake County. On the date of the collision, John and Linda Smith were in lawful possession of the aforesaid property as lessees, pursuant to a lease with plaintiffs-appellants Paul and Patricia Burnette, the lessors. Subsequently, on October 22, 1974, John Smith executed a proof of loss document presented to him by an agent of appellee State Farm Mutual Automobile Insurance Company, the automobile liability insurer of the ap-pellees Thomases. In executing the aforesaid proof of loss, John Smith represented himself to be the owner of the damaged premises.
Thereafter, appellee State Farm issued its draft in the sum of $2,380 to John W. Smith for repairs to the property. Upon receiving this draft, Smith endorsed and cashed it, but did not make repairs to the structure nor did he account to appellants.
Subsequently, appellants brought this negligence action against the Thomases and State Farm seeking the recovery of the cost of repairs and the loss of rental income during the time necessary for repairs.
Appellees answered, denying liability to appellants on the grounds that their payment to Smith discharged appellants’ claim. Appellees also filed a third-party complaint against John and Linda Smith.
Appellees thereafter moved for summary judgment. The court found the uncontro-verted facts to be as stated above and entered final summary judgment in favor of appellees as a matter of law. We think he’s wrong.
To begin with, we think it’s rudimentary that a landlord and tenant have separate estates in the demised premises during the term of the lease, the tenant’s being a possessory interest and the landlord’s a reversion interest.[1] Where a tor-tious act of a third party injures the interests of both the landlord and the tenant, each has a right of action for the injury to his own interest and each may maintain a separate action. Significantly, neither the landlord nor the tenant can in his separate action recover the damages to the estate of the other.[2] The wrongdoer does not have to respond in damages twice for the same injury, but he must compensate each of the parties for the injuries respectively sustained as consequences of his tort.
Of course, most torts that injure the landlord’s reversion will also be injurious to the tenant’s possessory interest, whereas a mere disturbance of the tenant’s possession very often will not affect the reversion of the lessor. With regard to the particular type of injury to the premises suffered in this case, it is well settled that damages to or the destruction of a building on the leased premises is an injury to the reversion of the landlord[3] as well as creating a right of action in the tenant for the damage to his possession. Moreover, we emphasize, it is also a well-recognized rule that the tenant has no power to bind the *1211 landlord or the reversion of the landlord by any act or contract on his part.[4]
Appellees contend, however, that certain exceptions to the general rules stated above preclude appellants from maintaining this suit and recovering thereon under the uncontroverted facts presented. First, they point to the fact that the lease between appellants and the Smiths gave the Smiths an option to purchase the property. They argue by way of analogy that a recovery against a third person in favor of a conditional vendee for damage to property is a bar to an action and recovery by the conditional vendor against the third person. The conditional vendor’s only right after a recovery or settlement, they say, is to recover from the conditional vendee for monies had and received. They cite to the venerable case of Smith v. Gufford.[5]
We think, however, their reliance on Guf-ford is misplaced. That case involved the conditional sale of a horse which was later wrongfully killed by a railroad train while in the possession of the conditional vendee. Our supreme court held that either the vendor or the conditional vendee could sue and recover damages for the tort, but recovery by either would bar any further recovery by the other. If the conditional vendee recovers for the tort, the vendor then acquires a right of action against him for monies had and received for his use and benefit. The court further declared that the horse killed by the train lost its identity as property upon being killed; therefore, it was said, if the conditional vendee purchases another horse with the monies collected as damages from the railroad, the vendor certainly does not become the owner of the new horse, nor does he acquire any equitable lien upon it for the purchase money due for the dead horse. Stated otherwise, there can be no reversionary interest in the dead horse, it having ceased to be property.
We yield to temptation and suggest that appellees are “beating a dead horse”—their analogy breaks down when the permanence of realty as property is considered. A re-versionary interest in injured realty may exist; and if such injury is caused while such interest is vested, recovery may be sought by the owner thereof. That such interest may be divested by the exercise of an option in another ought be no comfort to a tortfeasor causing the injury. The injury is real, present and its extent measurable— the “horse” lives on. Indeed, on the point, it has been stated as black letter law that “. . . the fact that the tenant has an option to purchase the leased premises does not deprive the landlord of his right of action.”[6] We subscribe to this rule.
Finally, appellees point out that the Smiths’ lease with appellants contained a covenant whereby the Smiths as tenants agreed to maintain the premises in the same condition and repair as at the commencement of the term of the lease, excepting only reasonable wear and tear, and refer further to a clause stating “tenants shall be responsible for all repairs to said property.” They assert that in such a case, where the lease requires the tenant to be responsible for all repairs, damage done by a tortfeasor gives rise only to a cause of action in favor of the tenant and not the landlord. Appellees cite us to the annotation in 12 A.L.R.2d at 1192 for this proposition and argue that a failure of the lessee to perform his duties under the lease to repair the premises does not give rise to a cause of action by the lessor against the tortfeasor, who has already paid the lessee in settlement for the damages. They contend the lessor’s remedy is against the lessee.
We cannot agree. We do recognize a split of authority regarding the effect of a covenant to repair upon the landlord’s right of action against a third-party tort- *1212 feasor. This split is apparent from a review of the annotation cited by appellees,[7] as well as from our independent research. We are unaware of any Florida case on the point, but the state of the law generally is well summarized in the following passage:
“Although as a general proposition neither the landlord nor the tenant can in his separate action recover for damages to the estate of the other, in some jurisdictions it is held that whenever the tenant is liable to the landlord for injuries to the freehold, either by contract or under the common law, he has a right of action against a third person causing such an injury. . . . Other courts, assuming the liability of the tenant to the landlord for injuries to the reversion by third persons, hold that reparation or satisfaction to the landlord is a condition precedent to the tenant’s right to sue, and that until such reparation is made, there has been no injury to the tenant. [Citations omitted.]” [8]
We subscribe to the latter rule.[9] The former rule not altogether unreasonably assumes an innocent lessee acting in good faith; but it opens the door to fraud by one who may recover for all damages, fail to repair injuries to the reversion and abscond without accounting to the lessor for the portion of the recovered damages assignable to the reversion — a distinct possibility here. The latter rule, on the other hand, protects the innocent lessor while at the same time, under the general law relating to landlord and tenant first discussed above, an unscrupulous one would be unable to recover for or appropriate unto himself damages recoverable for injury to the lessee’s possessory interest. Clearly, this is the sounder rule as affects the rights flowing between the lessee and the lessor; and certainly, it cannot prejudice the diligent third-party tortfeasor who, before he would settle with one in possession, need merely check the records to determine whether such possessor and the record owner are one and the same (a course unfortunately not pursued by appellees herein).
In sum, we hold that under the uncontro-verted facts herein appellants, as lessors, may maintain an action for damages against appellees for injuries to their rever-sionary interest in the leased premises. We do not concern ourselves now, of course, with the merits of appellees’ third-party claim over against the Smiths. For ought that appears, the issues therein are still viable.
In view whereof, the final summary judgment appealed from should be, and it is hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
BOARDMAN, C. J. and GRIMES, J., concur.

. See 49 Am.Jur.2d Landlord and Tenant § 82; 20 Fla.Jur. Landlord and Tenant § 23.

. See 49 Am.Jur.2d Landlord and Tenant § 84; 51C C.J.S. Landlord & Tenant § 261.

.See 49 Am.Jur.2d Landlord and Tenant § 86; 12 A.L.R.2d 1192, § 18 at 1122.

. See 49 Am.Jur.2d Landlord and Tenant § 83.

. 36 Fla. 481, 18 So. 717 (1895).

.See Am.Jur.2d Landlord and Tenant § 84 at 124, citing Hayden v. Consolidated Mining & Dredging Co., 3 Cal.App. 136, 84 P. 422 (Cal.3d DCA 1906).

. 12 A.L.R.2d 1192, esp. §§ 18, 19 and 20.

. 49 Am.Jur.2d Landlord and Tenant § 289 at 305.

.See California Dry-Dock Co. v. Armstrong, 17 F. 216 (C.C.D.Cal.1883); and see Nashville, C. & St. L. Ry. v. Heikens, 112 Tenn. 378, 79 S.W. 1038 (1904).