[No. 8551. In Bank. — November 27, 1885.]

B. F. M. PACKARD, Appellant, v. W. S. MOSS, Respondent.

Deed — Execution — Void Judgment — Color of Title — Adverse Possession. — The sheriff's deed to property sold under execution upon a judgment rendered by default, while a demurrer to the complaint was on file and undetermined, gives color of title to the grantee therein, and is admissible in evidence to support a plea of adverse possession against the judgment debtor and his successors in interest.

Id. — Tenants in Common — Conveyance by One. — Where two persons hold land as tenants in common, a deed by one of them purporting to convey the entire tract is sufficient to give color of title, and possession thereunder by the grantee claiming title to the whole premises will be adverse to the other tenant, and if continued for a sufficient period will bar the right of the latter to recover.

Id. — State Grant — Statute of Limitations. — The title of the plaintiff to the property in controversy, consisting of marsh and overflowed lands, was founded upon a certificate of purchase from the state. Held, that the statute of limitations did not commence to run against the plaintiff until the lands were certified to the state by the United States government.

Appeal from a judgment of the Superior Court of the county of San Joaquin, and from an order refusing a new trial.

The action was commenced October 22, 1874. The remaining facts are stated in the opinion.

*J. B. Hall,* for Appellant.

The sheriff's deed was void and inadmissible to show color of title. (*Settlemier* v. *Sullivan,* 97 U. S. 448; *King* v. *Randlett,* 33 Cal. 318, 322; *Bernal* v. *Gleim,* 33 Cal. 668, 676; *Walker* v. *Turner,* 9 Wheat. 541; *Duffit* v. *Tuhan,* 28 Kan. 292; Freeman on Judgments, sec. 117; *Farish* v. *Coon,* 40 Cal. 50.) The same is true of the deed from Cocke to Sanor. (*Edwards* v. *Bishop,* 4 N. Y. 64; *Bedell* v. *Shaw,* 59 N. Y. 46; *Roberts* v. *Morgan,* 30 Vt. 324; *Lefavour* v. *Homan,* 2 Allen, 356; *Purnell* v. *Wilson,* 4 Gratt. 21; *Culver* v. *Rhodes,* 87 N. Y. 348, 355; *Livingston* v. *Peru Iron Co.,* 9 Wend. 513; *Jackson* v. *Hill,* 5 Wend. 532; *Jackson* v. *Harder,* 5 Johns. 202; *Jackson* v. *Andrews,* 7 Wend. 152; *Jackson* v. *Frost,* 5 Cow. 346; *La Froubois* v. *Jackson,* 8 Cow. 583; S. C., 18 Am. Dec. 462; *Jackson* v. *Waters,* 12 Johns. 365.) The statute of limitations did not commence to run until the lands were certified to the state, and the plaintiff had ten years from that time in which to enforce his right of entry. (*Easton* v. *O'Reilly,* 63 Cal. 305; Code Civ. Proc., secs. 315, 316.)

*F. T. Baldwin,* and *J. H. Budd,* for Respondent.

The sheriff's deed gave color of title sufficient to base adverse possession on. (*Riggs* v. *Dooley,* 7 B. Mon. 236; *Northup* v. *Wright,* 7 Hill, 476; *Hesters* v. *Coats,* 22 Ga. 56; *Hill* v. *Wilson,* 2 Murph. 14; *Munro* v. *Merchant,* 28 N. Y. 9; *Minot* v. *Brooks,* 16 N. H. 374; *Whiteside* v. *Singleton,* 1 Meigs, 207; *Moody* v. *Fleming,* 4 Ga. 115; S. C., 48 Am. Dec. 210.)

SEARLS, C.—The judgment and order denying a new trial in this cause were affirmed upon the authority of *Packard* v. *Johnson,* No. 8850, by Department One, in an opinion filed September 11, 1884. (3 W. C. R. 763, 769.)

Upon petition of counsel for appellant, a hearing in Bank was ordered in each of the two causes. The facts being essentially the same in both cases, reference is herein made to the former opinion, which was prepared in *Packard* v. *Johnson*.

We think the conclusions reached in the former decision, with a single exception, are so manifestly proper as to call for no comment.

The exception to which we refer, and on account of which we suppose a hearing in Bank was ordered, relates to the question raised upon the plea of the statute of limitations.

It was, as we infer from the record, the dominant question upon the trial, and its proper solution is not without difficulties.

The instructions of the court to the jury are clear and explicit, and involved a correct exposition of the law touching the question of ouster and adverse possession.

In the former opinion it was said: "In the case at bar the question of ouster and of adverse holding for five years after the ouster were questions of fact, and there was evidence at the trial in the court below to sustain the finding of the jury upon that issue."

We understand appellant to attack this position, not upon the ground that the instructions of the court were improper as abstracts propositions of law, but upon the theory that there was not sufficient evidence to sustain the legal propositions. His contention is that the evidence fails to show an adverse possession in defendant. The facts essential to an understanding of the case may be stated in brief as follows: W. K. Melville purchased from the state of California and paid in full for 320 acres of swamp and overflowed lands, situate in San Joaquin County. The purchase was made under the act of the legislature of the state of California, providing for the sale and reclamation of the swamp and overflowed lands of the state, approved April 21, 1858.

On the 13th of August, 1858, Melville received a certificate of purchase of the land in question, in the usual form, under which he was entitled to ask for and demand a patent, when thereafter the lands should be confirmed and certified to the state by the general government.

On the 26th of April, 1859, Melville assigned to Alvin G. Ward, who thereafter and on the 15th of November, 1859, assigned to plaintiff and one A. J. Sanor.

The land in question was listed and certified over to the state of California by the United States government on the thirty-first day of December, 1866, pursuant to the act of Congress of September 28, 1850.

On the twenty-fifth day of March, 1859, one William E. Cocke recovered judgment by default against Melville in the District Court of San Joaquin County, upon which execution issued and was levied upon the property in question, which was in due time sold, purchased by Cocke, and not having been redeemed, the latter received a sheriff's deed, and on the twenty-fourth day of September, 1860, conveyed by quit claim deed to A. J. Sanor. Sanor and wife conveyed to defendant Moss, by deed dated December 5, 1864. The certificate, assignment, and several deeds mentioned were recorded in the proper county.

The judgment in *Cocke* v. *Melville* was entered by the clerk of the court, upon a default taken while a demurrer by defendant to complaint was on file and undetermined, and the judgment, execution, and sheriff's deed were admitted in evidence, not as proving title, but as evidence that the grantor of defendant entered upon the land in question under color of title, and in aid of defendant's plea of adverse possession and the statute of limitations.

The first question presented is, Did the sheriff's deed to Cocke give color of title? *Color of title* is defined to be an apparent title, founded upon a written instrument, such as a deed, levy of execution, decree of court, or the like. (3 Wait's Act. and Def. 17; 35 Ill. 394.)

To give color, the conveyance must be good in form, contain a description of the property, profess to convey the title, and be duly executed. (*La Frombois* v. *Jackson*, 8 Cow. 589.)

Containing these requirements, it will give color of title, although in fact invalid and insufficient to pass the title, or actually void, or voidable. (*Ewing* v. *Burnet*, 11 Pet. 41; *Murray* v. *Shanklin*, 4 Dev. & B. 289.)

It will not do to say that a deed is, for reasons not apparent on its face, *void*, and therefore cannot give color of title, for color of title is not, and does not profess to be, title at all; *color of title* is that which is a title in appearance, but not in reality. (*Wright* v. *Mattison*, 18 How. 50.)

"One of the very essentials of color of title is that it shall be raised by an instrument which appears to convey a title, but in reality conveys none; and it would seem almost ridiculous that it could be of any sort of importance, for the purpose of acquiring title under such a conveyance, whether the grantee acted in good faith in obtaining it or not." (Wood on Limitations, 530, 531.)

The sheriff's deed to Cocke purported on it face to convey the title to the latter, contained a description of the property, and was properly executed.

At least, it is not urged that the sheriff's deed is in other than the usual form. As a foundation of title, it is worthless, by reason of the void judgment in which it had its inception. We are not, however, considering it as a medium for the conveyance of title. An adverse claimant of land is a wrong-doer, and as such is treated and known to the law, until, by the lapse of years, his acts, before tortious, are consecrated by time and dignified as lawful.

A deed which gives color of title simply measures and fixes the limit, the extent of a wrongful possession, and while it continues wrongful, may be used against the wrong-doer as evidence of the extent of his wrongful

possession; and when by five years acquiescence the wrongful acts of possession come to be recognized as lawful, the deed which before fixed the extent of the wrong stands as a landmark to bound the right acquired.

Before, it defined the limits to which an unlawful possession extended. After five years of adverse possession, the occupancy having become valid, the boundaries which before marked the wrongful possession remain as indices of the extent of the right.

Any deed, though unrecorded, purporting to convey title, no matter on what founded, is *color of title.* (*Lea* v. *Polk Copper Co.,* 21 How. 493; *Dickenson* v. *Breeden,* 30 Ill. 279; *Hanna* v. *Renfro,* 32 Miss. 125.)

A sheriff's deed, without proof of the judgment and execution, is sufficient to give color of title. (*La Frombois* v. *Jackson,* 8 Cow. 589.)

In *Minot* v. *Brooks,* 16 N. H. 374, it was held that an unrecorded quitclaim deed of all a grantor's title under a collector's deed, though the collector's deed conveyed no interest, is *color of title.*

And a deed founded upon a void or voidable decree in chancery gives color of title. (*Whitesides* v. *Singleton,* 1 Meigs, 207.)

From the result of the foregoing and other cases, we conclude the sheriff's deed to Cocke was sufficient to give to the grantee named therein color of title.

So, too, the conveyance of Cocke to Sanor of September 24, 1860, though in form but a quitclaim deed, was, under the doctrine of *Minot* v. *Brooks,* above quoted, sufficient to give color of title to the latter.

According to the testimony of Sanor, he purchased from Cocke on his own account, paid a valuable consideration, entered into the exclusive possession, built a house and barn upon the land, resided with his family thereon, inclosed it by a fence,—a post-and-rail fence, a four-board fence around a part, and a part three boards,—had his stock upon it, and the exclusive use and enjoy-

ment of it; that he kept it fenced; that plaintiff lived near, and must have seen it often, etc.; had advised him to buy it in the first instance, etc.

We may, however, waive all question of adverse possession by Sanor or Cocke, and what follows?

Sanor was, with plaintiff, assignee under the Melville certificate of purchase from the state. As such assignees they would, if in possession, be deemed, in the absence of a showing to the contrary, tenants in common.

On the fifth day of December, 1864, Sanor and wife conveyed the whole of the property to the defendant Moss by a deed which describes the property and recites that they "grant, bargain, sell, release, remise, and convey to said Moss," etc. This deed was sufficient to convey a legal title. (*Touchard* v. *Crow*, 20 Cal. 150.) It was also sufficient to give to the defendant, who entered into possession under it, color of title.

Now, if real estate is held in common, and one tenant assumes to convey the entire land, and does convey by metes and bounds, his deed will give color of title, and if possession is taken under such deed, the purchaser claiming title to the whole premises, it is an actual ouster and disseisin of the co-tenant, and possession is adverse, and if continued for a sufficient period, will bar the right to recover by the co-tenant. (*Weisinger* v. *Murphy*, 2 Head, 604; *Bogardus* v. *Trinity Church*, 4 Paige, 178; *Leonard* v. *Leonard*, 10 Mass. 231.)

So long as one of two tenants in common remains in possession, as he is presumed to hold for himself and for his co-tenant, his acts of ownership will naturally be construed as evidence of the possession of both; but independent of authority, we can see no good cause in reason why a sale of the entire property by a tenant in common, who places the grantee in full possession in consonance with his deed, and who thereupon claims title to the whole, should not be treated as an ouster of

the co-tenant, whose right and possession have been thus signally ignored. .

"It is not necessary, in order to prove that a tenant in common has claimed the whole exclusively, that it should be proved that he made an express declaration to that effect, for it may be shown clearly by acts as well as words. Where one enters and takes the profits exclusively and continuously for a long period, under circumstances which indicate a denial of a right in any other to receive them, as by not accounting, with the acquiescence of the other tenants, an ouster may be presumed in this country, as well as it has appeared it may in England under like circumstances." (Angell on Limitations, sec. 432; *Low* v. *Patterson*, 1 Watts & S. 191; *Brackett* v. *Norcross*, 1 Me. 89; *Simmons* v. *Nahart*, 3 Allen, 316; *Lefavour* v. *Hannan*, 3 Allen, 354; *Frederick* v. *Gray*, 10 Serg. & R. 182.)

What constitutes color of title is a question of law for the court. The question of occupancy under it is one of. fact for the jury, and we have referred to the foregoing rules and authorities touching this last question, that the sufficiency of the evidence introduced may be more readily understood and compared.

There was testimony tending to show that defendant Moss took possession of the land immediately after receiving his deed in December, 1864, and went to improving the land and making up the fences; that he constructed levees to protect it from overflow at an expense of about twelve dollars per acre; that he had and claimed the exclusive possession, and received all the rents and profits and paid all taxes thereon; that he inclosed the land with a fence of posts and boards, most of it five boards high and part four; that he moved some of the fences placed there by Sanor in 1862, and that he repaired the fences and "put it under good fences"; that he had a conversation with plaintiff soon after purchas-

ing, from which it appeared plaintiff knew of his purchase.

There was also testimony tending to show that as far back as 1861 plaintiff signed and swore to a petition to the Swamp Land Commissioners, which stated Sanor, the grantor of defendant, to be the owner of the land in question.

We conclude from our examination of the case,—

1. That defendant entered in possession of the premises under a claim of title, exclusive of other right founded upon a written instrument, purporting to convey the property, and that such conveyance gave him *color of title* to the premises.

2. That the testimony was sufficient to warrant the jury in finding, as a matter of fact, that defendant had held the land adversely to plaintiff for more than five years next before the commencement of this action, and that the court did not err in its instructions to the jury, given at request of defendant, or in its refusal of certain instructions asked by plaintiff.

In reaching this conclusion, we have assumed as correct the position that the statute of limitations did not begin to run as against the title of plaintiff, founded upon his certificate of purchase from the state, until the land was certified to the state in December, 1866, as stated in the opinion of Department One of this court in *Packard* v. *Johnson*, No. 8850.

No doubt the possession of defendant and of Sanor, his grantor, prior to 1866, was adverse to any right of entry which plaintiff then had, but it is well settled that where there are two separate rights of entry, the loss of one by lapse of time does not impair the other, and if a person acquires a second right, he is allowed a new period in which to pursue his remedy, although he has neglected the first. (2 Cruise's Digest, 498.)

It does not follow, however, that the possession of defendant, which before was adverse to the plaintiff,

ceased to be so, when, in December, 1866, plaintiff's title was perfected, or the badges of occupancy and possession with which defendant had surrounded the property or had placed upon it ceased to be evidence of a continued adverse holding against the new title.

We are of the opinion the judgment of affirmance heretofore entered should stand as the judgment of the court.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.