[Civ. No. 4282.  Second Appellate District, Division One.—December 4, 1924.]

FRANK J. GOODWIN, as Administrator, etc., Appellant, v. JONATHAN SNYDER, Respondent.

[1] DEEDS—ACTION TO SET ASIDE—UNSOUNDNESS OF MIND OF GRANTOR—FINDINGS—EVIDENCE.—In this action to set aside an agreement of exchange and a grant deed executed by plaintiff's intestate during his lifetime in favor of defendant on the ground of the unsoundness of mind of the deceased at the date of the execution of said instruments, the evidence was ample to support the finding of the trial court that the deceased, at all times during the transactions leading up to and at the time of the consummation of said exchange, was competent to transact his business and said exchange of property, and understood and appreciated the nature and character of said transactions with defendant.

[2] ID.—FINDINGS—DATES—CONSTRUCTION.—In such action, the court having found that the deceased was of sound mind on the date he consummated the exchange with defendant, the further

1.  See 14 R. C. L. 590; 14 Cal. Jur. 365.

finding that the deceased was of unsound mind on and prior to a date some three months later cannot be held to be a finding that he was of unsound mind on the earlier date.

[3] ID.—FINDINGS — RECONCILIATION — LIBERAL CONSTRUCTION.—Findings are to be liberally construed in support of a judgment and, if possible, are to be reconciled so as to prevent any conflict upon material points, and, unless the conflict is clear and the findings are incapable of being harmoniously construed, a judgment will not be reversed upon the ground of a conflict in the findings.

[4] ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE — DISCRETION — APPEAL.—A motion for a new trial upon the ground of newly discovered evidence is not favorably regarded, and the appellate courts will not disturb the action of a trial court in refusing to grant such motion, except where it clearly appears that there has been an abuse of discretion.

[5] ID.—ABUSE OF DISCRETION—EVIDENCE — APPEAL. — In this action to set aside an agreement of exchange and a grant deed executed by plaintiff's intestate during his lifetime in favor of defendant, on the ground of the unsoundness of mind of the deceased at the date of the execution of said instruments, the showing made by plaintiff, upon the hearing of his motion for a new trial on the ground of newly discovered evidence, would not justify the appellate court in holding that the trial court abused its discretion in denying the motion.

---

(1) 9 C. J., p. 1254, n. 95, p. 1256, n. 20; 18 C. J., p. 434, n. 86, p. 443, n. 19.    (2) 9 C. J., p. 1259, n. 73; 38 Cyc., p. 1986, n. 85. (3) 4 C. J., p. 787, n. 47, p. 1167, n. 85; 38 Cyc., p. 1986, n. 84, p. 1987, n. 88.    (4) 4 C. J., p. 835, n. 67; 29 Cyc., p. 882, n. 81. (5) 29 Cyc., p. 901, n. 59, p. 1009, n. 54.

APPEAL from a judgment of the Superior Court of Los Angeles County. T. N. Harvey, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thomas K. Case for Appellant.

C. W. Hall for Respondent.

CURTIS, J.—This action was instituted by the plaintiff Frank J. Goodwin, as administrator of the estate of William H. H. Goodwin, deceased, to set aside an agreement of exchange and a grant deed, executed by the said William H. H. Goodwin during his lifetime in favor of the defend-

---

ant Jonathan Snyder, on the ground of the unsoundness of
mind of the said William H. H. Goodwin at the date of the
execution of said instruments. By the said agreement of
exchange the said William H. H. Goodwin agreed to convey
to the said Snyder certain real property owned by him and
situated in the county of Los Angeles, in consideration of
the conveyance by the said Snyder to the said William H. H.
Goodwin of two certain pieces of real property owned by
the said Snyder, one situated in the county of San Bernar-
dino and the other in the county of Riverside. The grant
deed sought to be set aside was made in pursuance of said
agreement of exchange and purported to convey to said
Snyder said two pieces of real property owned by Goodwin
and situated in the county of Los Angeles. It was alleged
in the complaint that the said William H. H. Goodwin, was
at the time he executed said agreement and deed, and for a
long time prior thereto had been, of unsound mind, and
that said Snyder at all of said times knew of the mental
condition of the said Goodwin and of his mental incapacity
to transact business. Upon a trial of the action the court
gave judgment in favor of the defendant Snyder and plain-
tiff has appealed therefrom.

[1] The first point made by appellant in support of his
appeal is that the evidence is not sufficient to support the
finding of the court that said William H. H. Goodwin, at all
times during the transactions leading up to and at the time
of the consummation of said exchange, was competent to
transact his business and said exchange of property, and
understood and appreciated the nature and character of said
transactions with the defendant Jonathan Snyder.

The trial of this action lasted eight and one-half days. A
large number of witnesses were called and testified in the
case. Much of the testimony centered around the issue as
to the soundness or unsoundness of mind of the said William
H. H. Goodwin at the time of his business dealings with
the defendant Snyder and which culminated in the execution
of the exchange agreement and the grant deed which plain-
tiff seeks to have set aside. Many of these witnesses testi-
fied that Goodwin, on account of his advanced years, was of
unsound mind and had been unable for that reason to trans-
act business for a number of years prior to the first day of
November, 1919, the date of the execution of the grant deed,
and that this unsound condition of his mind continued down

to the date of his death, which occurred on the sixth day
of May, 1920. On the other hand, at least five witnesses,
called on behalf of the defendant Snyder, testified in sub-
stance that Goodwin's mind was sound at the date of the
execution of the deed and for some time prior thereto, and
that at the time of his negotiations with the defendant Sny-
der he was perfectly capable of transacting business and
understood the nature and character of the negotiations he
was then carrying on with the defendant Snyder. In
addition to the testimony of these five witnesses there was
offered on behalf of the defendant Snyder, and read in evi-
dence, a transcript of the testimony of the said William
H. H. Goodwin, given by him on June 23, 1919, at the trial
of an action in the superior court of said county of Los
Angeles (this action had no connection with the present
action), wherein the said Goodwin was one of the witnesses.
The testimony of the said Goodwin, given in said last-
mentioned action, covered over twenty pages of the tran-
script on appeal in this action. It appears from said testi-
mony that the said Goodwin testified in said action on his
own behalf and was cross-examined at length by opposing
counsel. This testimony tended at least to show that the
said Goodwin was of sound mind on June 23, 1919, less than
five months prior to the date of the grant deed sought to
be set aside in this action. Proof of the condition of Good-
win's mind on June 23, 1919, would be competent and ma-
terial evidence as to its condition on November 1, 1919.
Especially would this be true when it was alleged in the
complaint, and when many of the witnesses, testifying in
favor of the plaintiff, gave as their opinion, that Goodwin
had been of unsound mind for a number of years prior to
his death. It is very evident from this brief review of the
evidence given in the case that appellant's contention of
the insufficiency of the evidence to sustain the finding of the
court that Goodwin was of sound mind at the time of his
negotiations with the defendant Snyder cannot be sustained.
The evidence is ample to support said finding.

[2] In this connection we might further add that the
plaintiff joined with said action against the defendant Sny-
der an action against defendant Jennie Cook to set aside two
deeds, executed by the said William H. H. Goodwin on
January 27, 1920, in favor of said Cook, to the two pieces
of real property conveyed to him by the defendant Snyder.

These deeds, it was alleged, were given without consideration except a purported agreement on the part of the defendant Jennie Cook to care for the said Goodwin during his lifetime, which agreement the court found was never carried out by the said Jennie Cook, and that it was never her intention to carry out said agreement. It was sought to set aside these two deeds on account of the unsoundness of mind of said Goodwin at the date of their execution, and it was alleged in the complaint that the said defendants Snyder and Cook, knowing of Goodwin's mental condition, entered into a conspiracy to induce and persuade the said Goodwin to make said exchange of properties with the defendant Snyder, and thereafter to convey to the said Cook the two pieces of real property received by him from Snyder. The court found that no conspiracy existed between said defendants; that Goodwin was of sound mind on and prior to November 1, 1919, when he executed the deed to the defendant Snyder, but that at the date of the execution of said two deeds to the defendant Jennie Cook, and prior thereto, that said Goodwin was of unsound mind, and that the said Jennie Cook knew of the unsound condition of his mind at the time she received from him the two deeds above referred to. It is now contended by the appellant that the court having found that the said Goodwin was of unsound mind at the time he executed the deeds in favor of the defendant Cook and prior thereto, that this finding is inconsistent with and contradictory to the finding that the said Goodwin was of sound mind on and prior to the first day of November, 1919. There is nothing inconsistent nor contradictory in these two findings. The court having expressly found that the said Goodwin was of sound mind on November 1, 1919, the further finding that he was of unsound mind on and prior to January 27, 1920, cannot by any possible construction be held to be that he was of unsound mind on November 1, 1919. **[3]** "Findings are to be liberally construed in support of a judgment and, if possible, are to be reconciled so as to prevent any conflict upon material points, and unless the conflict is clear, and the findings are incapable of being harmoniously construed, a judgment will not be reversed upon the ground of a conflict in the findings." (*Ames* v. *City of San Diego*, 101 Cal. 390, 395 [35 Pac. 1005. 1006]. See, also, *Schultz* v. *McLean*, 93 Cal.

329 [28 Pac. 1053] ; *Heaton-Hobson etc.* v. *Arper,* 145 Cal. 282, 285 [78 Pac. 721].)

The appellant makes the further point in support of his appeal that the court erred in refusing to grant his motion for a new trial. The motion for a new trial was based upon the ground of newly discovered evidence, and in support thereof appellant prepared and presented three affidavits, one by himself, one by Milton Carlson, a handwriting expert, and one by Mrs. Gertrude Lloyd, who testified as a witness at the trial. [4] No rule is better settled in the courts of this state than that motions for a new trial upon newly discovered evidence are not favorably regarded, and that appellate courts will not disturb the action of a trial court in refusing to grant a motion of this kind, except where it clearly appears that there has been an abuse of discretion. (*Fresno Estate etc.* v. *Fiske,* 172 Cal. 583, 601 [157 Pac. 1127].) [5] We find nothing in the showing made in this case, upon the hearing of appellant's motion for a new trial, that would justify us in holding that the court abused its discretion in denying the motion. In the affidavit of Milton Carlson, used on the hearing of the motion for a new trial, the said Carlson, after setting forth his qualifications and experience as a handwriting expert, stated that he was well acquainted with the genuine signature of the said William H. H. Goodwin, and that he had examined a number of the exhibits in this case, among them the agreement of exchange between said Goodwin and the defendant Snyder, and also a supplemental agreement of exchange between the same parties, and he gave as his opinion that a number of the alterations and corrections shown on said documents were false, fictitious, spurious, and forged, and that the signature of said Goodwin to said supplemental agreement of exchange was forged. Said Carlson also stated in said affidavit that he was absent from the state of California at the trial of said action, and that the exhibits in said action, examined by him and referred to in his affidavit, had not been submitted to or examined by him until after the rendition of the judgment and decision in said action. One of the other affidavits used by appellant on his motion for a new trial was made by Mrs. Gertrude Lloyd. Mrs. Lloyd had been a witness in behalf of the plaintiff at the trial of the action and had testified that she had resided in the Rose Palace Apartments in Venice from January, 1919, until the

early part of the year 1920, except during the month of
August of that year; that during the time she resided in
said apartments the said William H. H. Goodwin resided
therein and owned the same; that she saw said Goodwin
frequently during said time; and, upon being asked to state
whether she had formed any opinion as to whether he was
capable or not of transacting business, she replied: "Noth-
ing outside of reading his papers upside down." She fur-
ther stated as a witness that she knew the defendant Jona-
than Snyder, and saw him in the Rose Palace Apartments
during the time he was negotiating with Mr. Goodwin for
an exchange of properties. She heard a conversation, so
she stated while as a witness, between Goodwin, Snyder,
Mrs. Cook, and the latter's son, Mr. Vincent. Regarding
this conversation, she said: "The only thing that I remem-
ber was Mr. Snyder asking Mr. Goodwin if he wanted to
make this trade and the only thing I remember him saying,
speaking about the weather— He said, 'It is a very nice
day.' That was when he was asked if he wanted to make
the trade." She further stated that she saw papers there,
but that she did not pay any attention to them. She knew
Mr. Goodwin was asked to sign them, and that he simply
said something about the weather, said it was a nice day.
In the affidavit of Mrs. Lloyd, used by appellant upon the
motion for a new trial, she reiterates the facts testified to
by her at the trial, but in reciting them in her affidavit she
goes much more into detail and among other things she
states in her affidavit "that affiant heard Jennie Cook, Sam
Vincent and Walter Pfunder upon said occasion while stand-
ing by the side of Mr. Goodwin, who was sitting near the
table where the said document was spread out, and while
pointing towards the said document, repeatedly say, 'Sign
here,' and that while this request was repeated over and
over to Mr. Goodwin many times, and from all angles at
the said table, that Mr. Goodwin appeared to take no heed
to what they were saying, and continued to set in his chair,
wearing the same blank expression upon his face; that affiant
attached so much importance to said incident that she made
a memorandum of the date thereof on a shoebox which
was afterwards inadvertently lost or destroyed." She fur-
ther stated in her affidavit that she later saw Jennie Cook,
who appeared to be somewhat depressed in spirits, and when
asked by affiant as to how the negotiations were progressing,

the said Jennie Cook replied that "so far as we are concerned, we are all ready to make this trade, but we have not been able to get Mr. Goodwin's signature." She further stated in her affidavit that a few days thereafter she again saw the said Jennie Cook, who appeared to be very much elated and who informed her that Mr. Goodwin had signed the agreement of exchange with Mr. Snyder. In an attempted explanation as to why she had not testified to these matters while as a witness at the trial, the said Gertrude Lloyd stated in her affidavit that "she was under a misapprehension as to the status of the parties to the action, and as to the identity of plaintiff and defendant, and she was reluctant to disclose to plaintiff's attorney any of the facts herein set forth, and that she did not disclose to them or to the plaintiff, or to anyone through whom they could have reasonably been expected to gain such information all of the facts hereinbefore set forth, and she never did disclose the same to plaintiff's then counsel, and did not disclose the same to the plaintiff until after the rendition of the decision of the court in said action." The third affidavit used by appellant, on his motion for a new trial, was that made by the plaintiff himself. In his affidavit he stated that the witness Mrs. Gertude Lloyd at no time before the trial disclosed to him the facts set forth in her affidavit, and that he did not discover them until after the rendition of the decision in this action. He further set forth in his affidavit that some two or three weeks prior to the trial of the action he had endeavored to secure from G. C. Dennis, whose office was in the city of Los Angeles, possession of "the purported exchange agreement, and the purported supplemental agreement for exchange of properties between William H. H. Goodwin and Jonathan Snyder"; that said Dennis had possession of said papers at said time and showed the same to plaintiff; thereupon plaintiff demanded of said Dennis that he either deliver to him the said documents or permit him to have the same photographed and examined by handwriting experts, but that the said Dennis refused to comply with either of said demands, and that plaintiff was therefore unable to have said documents examined by handwriting experts, and that they were not introduced in evidence by the defendants until toward the close of the trial. In his affidavit plaintiff further stated that he had endeavored to

obtain the services of Milton Carlson, a handwriting expert, at the time said documents were produced in court and introduced at the trial of said action, in order that said Carlson might examine the same and furnish his opinion as to the genuineness or spuriousness of said documents, but that at said time the said Milton Carlson was absent from the state of California, and for this reason plaintiff was unable to obtain his services, and that said Carlson did not return to the state of California until after the rendition of the decision in this action. It is apparent from the affidavit of plaintiff that after the agreement of exchange and the supplemental agreement had been admitted in evidence, he had ample opportunity to have them examined by a handwriting expert in order that such expert might give his opinion as to the genuineness of said documents. While it is true that he might not have been able to have secured the services of Mr. Carlson for this purpose, yet there is no showing that he could not have secured the services of other competent and experienced experts in handwriting to examine said documents and to testify as to their genuineness.

The affidavit of Mrs. Lloyd as to new matter set forth facts of doubtful materiality in so far as they relate to the action against the defendant Snyder, and the showing as to why these facts were not brought out at the trial, to say the least, is not entirely satisfactory. Appellant lays great stress upon the facts set forth in Mrs. Lloyd's affidavit, to the effect that Mrs. Cook appeared somewhat depressed on one occasion when she told Mrs. Lloyd that they were unable to get Goodwin to sign the agreement of exchange, and that on another occasion Mrs. Cook appeared greatly elated, and stated on this later occasion that Goodwin had signed the agreement of exchange. As far as this action against the defendant Snyder is concerned, evidence of these facts, if admissible at all against the defendant Snyder, could only be considered in connection with the allegation that a fraudulent conspiracy existed between the defendants Cook and Snyder to induce Goodwin to make the exchange with the defendant Snyder. The court found against the appellant on this issue, and at the hearing of the motion for a new trial, the trial court undoubtedly took into consideration all the evidence produced at the trial upon this issue, as well as the purported facts set forth in the affidavit of Mrs. Lloyd,

and after a consideration of all of such evidence and facts, denied the appellant's motion for a new trial. We are not able to say that there was any abuse of discretion on the part of the court in so denying appellant's motion. Another circumstance set forth in the affidavit of Mrs. Lloyd, and which in the opinion of the appellant is entitled to serious consideration, is that relating to the efforts of Mrs. Cook and others to induce Goodwin to sign the agreement of exchange. She states in her affidavit that she attached so much importance to this incident that she made a memorandum of the date thereof on a shoebox. When she testified at the trial she referred to a meeting between Goodwin, Snyder, Mrs. Cook, and others, where there were papers, and where the question under discussion was the trade between Goodwin and Snyder. Evidently this was the same meeting as that referred to in her affidavit, yet at the trial she said, "I did see papers there. I didn't pay any attention to them. I knew Mr. Goodwin was asked to sign them. When he was asked on this matter he simply said something about the weather—he said it was a nice day." The purported new matter as detailed by her in her affidavit, when considered in connection with the testimony already given by her at the trial, would not, in our opinion, be of any determining weight in the decision of any of the issues involved in this action. We have no doubt that it was given due consideration by the trial court at the time of its ruling upon the motion for a new trial, and if after considering it the court disregarded it *in toto,* we see no legal reason for the appellant to complain.

We find no error in the record and are of the opinion that the judgment should be affirmed, and it is so ordered.

Conrey, P. J., and Houser, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 2, 1925.

All the Justices concurred.