[Civ. No. 2941.   Third Appellate District.—November 26, 1926.]

# WILLIAM R. CLAVEY, Respondent, v. JESSE LONEY, Administrator, etc., Appellant.

[1] FINDINGS — CONSTRUCTION OF — JUDGMENTS. — Findings should be liberally construed to support the judgment, if possible, but where the findings complained of are material, irreconcilable, and at variance, the judgment must be reversed, for the reason that it then becomes impossible to determine which findings controlled the trial court in rendering judgment.

[2] JUDGMENTS—EXTRINSIC FRAUD—EQUITY—TRUSTS—INNOCENT PURCHASER.—Equity will relieve an injured party from the effect of a judgment or decree procured by extrinsic fraud, which was not the result of negligence or laches on the part of the complainant, and, in a proper case, will declare a resulting trust in favor of the injured party, unless the property has reached the hands of an innocent purchaser, who claims it in good faith and without knowledge or notice of the fraud.

[3] ID.—INTRINSIC FRAUD—EQUITY.—While, in a proper case, equity will relieve against extrinsic fraud, it is equally true that equity will refuse to interfere in a case where a judgment or decree has been procured by intrinsic fraud only.

[4] ID.—FORGED DOCUMENTS—PERJURED TESTIMONY—INTRINSIC FRAUD —COLLATERAL ATTACK.—A judgment procured by forged documents, or perjured testimony, is the result of intrinsic fraud, and cannot be vacated in a collateral attack.

[5] ID.—EXTRINSIC FRAUD—EQUITY.—The extrinsic fraud which alone will warrant a court of equity in setting aside a judgment or decree consists of such fraud as prevents a real trial upon the issues involved in the case, like conduct which prevents the injured party from receiving notice of the action, or which causes the absence of necessary witnesses.

[6] QUIETING TITLE—DECREE OF DISTRIBUTION—MISTAKE—FINDINGS— CONSTRUCTION—EQUITY.—In an action to quiet title to real property, where the findings show that the property originally belonged to one who died leaving a father and mother; that the mother was appointed the administratrix of her son's estate; that after the father's death, the whole of the property in question was distributed to the mother; that the mother thereafter

---

1.  See 24 Cal. Jur. 1009.
2.  See 15 Cal. Jur. 14; 15 R. C. L. 762.
4.  See 15 Cal. Jur. 18; 15 R. C. L. 764.
5.  See 15 Cal. Jur. 15.

conveyed said property to another son; that the latter there-
after conveyed said property to plaintiff; that plaintiff com-
menced the instant action seventeen years after the decree of
distribution of said property, and that plaintiff and his prede-
cessor, since the decree of distribution, have been in open,
notorious, and adverse possession and have paid all taxes assessed
against the property, and a further finding is made that the
whole of said property was distributed to the mother "evidently
through mistake while an undivided one-half interest therein
should have been distributed to the estate" of the father, every
intendment is in favor of the judgment for plaintiff (the evidence
not being before the appellate court), and in the absence of any
showing to the contrary, it must be presumed that the complain-
ants were suffering from no disability, that they had full knowl-
edge of the proposed distribution, and that the mistake was a
mere mistake as to the law concerning which equity will not
interfere.

[7] ID.—DECREE OF DISTRIBUTION—COLOR OF TITLE.—A decree of dis-
tribution furnishes sufficient color of title upon which to base an
action to quiet title.

[8] ID. — NOTICE OF HEARING PETITION FOR DISTRIBUTION — APPEAL —
JUDGMENTS—PRESUMPTIONS.—In such action, in support of the
judgment, it must be presumed that notice of the time and place
of hearing the petition for distribution complained of was duly
given according to the provisions of section 1634 of the Code
of Civil Procedure.

[9] ID.—EFFECT OF GIVING NOTICE OF HEARING PETITION FOR DISTRIBU-
TION.—The giving of notice of time and place of hearing the
petition for distribution summons the world before the court
and binds those, at least, who are interested in the estate.

[10] ID.—PRESUMPTIONS—LACHES—STATUTE OF LIMITATIONS.—In such
action, with the presumption that the heirs, at the time of making
the decree of distribution, were under no disability as to their
age or competency, and had full knowledge of the decree, they
would be guilty of laches which would bar their defense to this
action, after the lapse of seventeen years with no excuse offered
for such delay; and where the deed from the mother to her son
was executed and recorded three years after the making of the
decree of distribution, this would set the statute of limitations
in motion, and the defense to this action would have been barred
within four years therefrom.

[11] ID.—WAIVER OF RIGHTS—EVIDENCE.—In such action, the defend-
ant has waived whatever rights he may have enjoyed, where
during the seventeen years preceding the commencement of the

7. See 12 Cal. Jur. 197.

instant action no complaint was ever made in the face of hostile acts of ownership concerning the property.

[12] ID.—COLLATERAL ATTACK—ADVERSE POSSESSION—FINDINGS—CONSTRUCTION.—In such action, in view of the fact that the defense set up constitutes a collateral attack upon the decree of distribution, and that such decree furnished color of title under which adverse title was acquired, the findings of the court are not at variance, but can be reconciled to support the judgment for plaintiff.

---

(1) 4 C. J., p. 1056, n. 76; 33 C. J., p. 1172, n. 50.   (2) 34 C. J., p. 470, n. 44; 39 Cyc., p. 559, n. 29.   (3) 34 C. J., p. 472, n. 66, 67. (4) 34 C. J., p. 475, n. 6, p. 476, n. 9.   (5) 34 C. J., p. 471, n. 48, p. 472, n. 66.   (6) 4 C. J., p. 731, n. 81; 21 C. J., p. 93, n. 13; 24 C. J., p. 532, n. 29; 32 Cyc., p. 1330, n. 72.   (7) 32 Cyc., p. 1330, n. 72.   (8) 24 C. J., p. 532, n. 29.   (9) 24 C. J., p. 513, n. 20, p. 528, n. 99.   (10) 24 C. J., p. 532, n. 29; 32 Cyc., p. 1343, n. 58. (11) 32 Cyc., p. 1343, n. 58.   (12) 33 C. J., p. 1169, n. 36.

APPEAL from a Judgment of the Superior Court of Tuolumne County. J. T. B. Warne, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. H. Grayson for Appellant.

Rowan Hardin for Respondent.

THOMPSON, J., *pro tem.*—This is an appeal from a judgment in favor of plaintiff quieting title to real property situated in Tuolumne County. The complaint is in the usual form. The appellant contends that the findings are irreconcilable, and that the judgment should, therefore, be reversed. The evidence adduced at the trial is not before this court.

The trial court found the following facts: That Jerome Loney was the owner of 160 acres of land, situated in Tuolumne County, at the time of his death; that he died June 4, 1897, without issue, but leaving surviving him, as his heirs at law, a mother and father, named respectively, Catherine and James. October 30, 1897, Catherine was appointed and qualified as administratrix of the estate of her son, Jerome. May 9, 1904, James, the father, died intestate, possessed of an undistributed one-half interest in this ranch, and leaving

surviving him his wife, Catherine, and several children. His estate was never administered. Subsequently, in the estate of Jerome, the son, the entire interest in the ranch was distributed April 1, 1907, *by mistake,* to Catherine, the mother. January 31, 1910, she conveyed the entire interest in this ranch to Julius, one of their sons. April 21, 1921, Julius conveyed the land to plaintiff, who has ever since occupied and claimed title to the land openly, notoriously and adversely. All taxes which were levied against the property, for more than five years immediately preceding the commencement of the action, were paid by plaintiff and his predecessor in title, who claimed adverse title under the decree of distribution, which conferred a color of title upon them.

The suit was commenced April 21, 1924. Upon the findings, the main features of which are mentioned above, the court rendered judgment quieting title in plaintiff.

The inconsistency in the findings, which is alleged to exist, is that plaintiff's grantor took possession, and claimed the land in question under the decree of distribution which vested them with a color of title, and thereafter, since April 1, 1907, they have been in open, notorious, and adverse possession, and have paid all taxes which have been assessed against the same; and that plaintiff is the owner and entitled to possession, and that the defendant has no right, title, or interest in said land, or any part thereof. While, upon the contrary, the trial court found, "That the whole of said property was distributed to said Catherine Loney, *evidently through mistake,* while an undivided one-half interest therein . . . should have been distributed to the estate of James Loney Sr., deceased."

Defendant contends that the decree of distribution which erroneously gave an undivided one-half interest in this 160-acre tract to Catherine, instead of distributing it to the estate of her husband, to which it belonged, automatically created a resulting trust in her, for the benefit of her children, to the extent of this one-half interest.

[1] Findings should be liberally construed to support the judgment, if possible. (*Ames* v. *City of San Diego,* 101 Cal. 390 [35 Pac. 1005]; *Goodwin* v. *Snyder,* 70 Cal. App. 98 [232 Pac. 763].) But where the findings complained of are material, irreconcilable, and at variance, the judg-

ment must be reversed, for the reason that it then becomes impossible to determine which findings controlled the trial court in rendering judgment. (*Los Angeles & Ariz. Land Co.* v. *Marr,* 187 Cal. 126, 132 [200 Pac. 1051]; *Estep* v. *Armstrong,* 91 Cal. 659 [27 Pac. 1091].)

[2] Equity will relieve an injured party from the effect of a judgment or decree procured by extrinsic fraud, which was not the result of negligence or laches on the part of the complainant. (*Sohler* v. *Sohler,* 135 Cal. 323 [87 Am. St. Rep. 98, 67 Pac. 282]; *Bacon* v. *Bacon,* 150 Cal. 477 [89 Pac. 317]; *Simonton* v. *Los Angeles Trust & Savings Bank,* 192 Cal. 651, 656 [221 Pac. 368]; *Estate of Ross,* 180 Cal. 651, 658 [182 Pac. 752].) And in a proper case, will declare a resulting trust in favor of the injured party (*Sholer* v. *Sholer, supra*), unless the property has reached the hands of an innocent purchaser, who claims it in good faith, and without knowledge or notice of the fraud. (3 Pomeroy's Equity Jurisprudence, 4th ed., 2405, No. 1053.)

In the leading case of *Sohler* v. *Sohler, supra,* Xavier Sohler died testate, leaving a wife and two posthumous children, and pretermitted heirs. The wife was appointed executrix of his will. She had another child, by a former husband, who was named Paul Reuss. Upon distribution of the estate the widow conspired with her son, Paul, who was in no way interested in the estate, and deceived and misled the court and the parties interested into believing that he was also a son of the deceased, and thereby procured distribution of one-eighth share of the estate. While this estate was still in control of the guilty party, the court held that the facts alleged in that case, coupled with the fact that the widow was not only the executrix, but mother and guardian of the injured, dependent, infant offspring whom it was her duty to protect, that the evidence conclusively showed extrinsic fraud, and declared a trust for the benefit of the defrauded infants.

[3] While, in a proper case, equity will relieve against extrinsic fraud, it is equally true that equity will refuse to interfere in a case where a judgment or decree has been procured by intrinsic fraud only. (*Wollenshlager* v. *Riegel,* 186 Cal. 622, 628 [200 Pac. 726]; *Pico* v. *Cohn,* 91 Cal. 133 [25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970, 27 Pac. 537]; *Hanley* v. *Hanley,* 114 Cal. 690 [46 Pac. 736]; *Mul-*

cahey v. *Dow*, 131 Cal. 73 [63 Pac. 158] ; *Estate of James,* 99 Cal. 374 [37 Am. St. Rep. 60, 33 Pac. 1122] ; *Lynch* v. *Roney*, 112 Cal. 282 [44 Pac. 565] ; *Estate of Cahalan*, 70 Cal. 604 [12 Pac. 427] ; *Dean* v. *Superior Court*, 63 Cal. 473.) [4] A judgment procured by forged documents, or perjured testimony, is the result of intrinsic fraud, and cannot be vacated in a collateral attack. [5] The extrinsic fraud which alone will warrant a court of equity in setting aside a judgment or decree consists of such fraud as prevents a real trial upon the issues involved in the case, like conduct which prevents the injured party from receiving notice of the action, or which causes the absence of necessary witnesses. (*Sohler* v. *Sohler, supra; Flood* v. *Templeton*, 152 Cal. 148 [13 L. R. A. (N. S.) 579, 92 Pac. 78].)

[6] But in the instant case, there is no finding of the trial court that plaintiff, or his predecessors in title, were guilty of extrinsic fraud, or any fraud at' all. The only finding complained of is that the decree of distribution was ''evidently made through mistake.'' Since the evidence adduced at the trial is not before this court, it is impossible for this court to determine what the nature of the mistake was or how it occurred. For aught that appears in the record before us, this mistake may have been due to the negligence or conduct of the parties represented by the defendant. Every intendment is in favor of the judgment, and in the absence of any showing to the contrary, we must presume that the complainants were suffering from no disability; that they had full knowledge of the proposed distribution, and that the mistake was a mere mistake as to the law concerning which equity will not interfere.

It is specifically found by the court that the plaintiff and his predecessor in title took possession under the decree of distribution, which furnished them with color of title. [7] A decree of distribution furnishes sufficient color of title upon which to base an action to quiet title. (*Owsley* v. *Matson*, 156 Cal. 401 [104 Pac. 983] ; *Wilson* v. *Atkinson*, 77 Cal. 485 [11 Am. St. Rep. 299, 20 Pac. 66] ; *Gavin* v. *Phillips*, 12 Cal. App. 34 [106 Pac. 424] ; *Akley* v. *Bassett*, 189 Cal. 625, 640 [209 Pac. 576] ; *Grossman* v. *Yip Wing*, 62 Cal. App. 121, 128 [216 Pac. 634] ; *Pereira Farms Corp.* v. *Simas*, 69 Cal. App. 159, 163 [230 Pac. 976].) Section 322 of the Civil Code provides: ''When it appears that the

occupant, or those under whom he claims, entered into possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree or judgment, or some part of the property, under such claim, for five years, the property so included is deemed to have been held adversely."

[8] In support of the judgment, also, it must be presumed that notice of the time and place of hearing the petition for distribution complained of was duly given according to the provisions of section 1634 of the Code of Civil Procedure. [9] It has been repeatedly said by our courts that the giving of this notice summons the world before the court (*William Hill Co.* v. *Lawler,* 116 Cal. 359 [48 Pac. 323]; *Warren* v. *Ellis,* 39 Cal. App. 542, 547 [179 Pac. 544]), and binds those, at least, who are interested in the estate. In the *Estate of Ross,* 187 Cal. 454, 465 [202 Pac. 641, 646], it is said: "The distribution of an estate includes the determinations of the persons who by law are entitled thereto, and also the proportions to which each of these persons are entitled."

[10] The decree of distribution complained of was made in 1907, and this action was not commenced until April, 1924. With the presumption that the heirs were then under no disability as to their age or competency, and had full knowledge of this decree, they would be guilty of laches which would bar defense to this action, after a lapse of seventeen years with no excuse offered for such delay. Moreover, the deed from Mrs. Loney to her son, Julius, was executed and recorded in 1910. Certainly this would set the statute of limitations in motion, and the defense to this action would have been barred within four years therefrom. (*Unger* v. *Mooney,* 63 Cal. 586 [49 Am. Rep. 100]; *Bath* v. *Valdez,* 70 Cal. 350 [11 Pac. 724]; *Feliz* v. *Feliz,* 105 Cal. 1 [38 Pac. 521]; *Packard* v. *Moss,* 68 Cal. 123 [8 Pac. 818]; *Alvarado* v. *Nordholt,* 95 Cal. 116 [30 Pac. 211]; *Winterburn* v. *Chambers,* 91 Cal. 170 [27 Pac. 658]; *Akley* v. *Bassett,* 189 Cal. 625, 640 [209 Pac. 576].)

[11] Then, in April, 1921, the deed to plaintiff was executed and recorded and he took possession with continuous claim of title, openly, notoriously, and adversely exercised. During these seventeen years, with all these hostile acts of ownership, no complaint was ever made. We are, therefore, of the opinion that the defendant has waived whatever rights he may have enjoyed.

[12] For the reason that the defense set up in this action constitutes a collateral attack upon the decree of distribution, and that it furnished color of title under which adverse title was acquired, we are of the opinion that the findings of the court are not at variance, but can be reconciled to support the judgment.

The judgment is therefore affirmed.

Plummer, J., and Finch, P. J., concurred.