[Civ. No. 12607–S. Second Appellate District, Division One.—June 21, 1940.]

EDITH LARRABEE, Appellant, v. MARY TRACY et al., Defendants; ERNEST P. WELLMAN, Respondent.

Robert M. Kaufman and J. B. Mandel for Appellant.

Winterer & Ritchie for Respondent.

YORK, P. J.—The instant action in equity was instituted by appellant on July 22, 1938, to vacate and set aside an order of the superior court sitting in probate which, it is alleged, was predicated upon the fraud and deceit of the respondent Wellman. The record herein reveals that one Mark H. Rice died on August 6, 1931, leaving a last will and testament providing as follows:

"FIRST: I hereby direct my Executor, hereinafter named, to pay all my just debts and funeral expenses as soon after my demise as can be lawfully and conveniently done.

"SECOND: The entire, residue and remainder of my estate, both real and personal and wheresoever situated, I give, devise and bequeath as follows:

"One Sixth (1/6) thereof to my cousin Mary Tracy, of Northfield, Vermont;

"One Sixth (1/6) thereof to my cousin Kate Chase, also of Northfield, Vermont;

"One Third (1/3) thereof equally, share and share alike to the Children's Hospital, now located on Sunset Blvd., Los Angeles, California, the Salvation Army and the Goodwill Industries, of So. Calif., Inc., of Los Angeles, California.

"THIRD: I hereby generally and specifically disinherit each, any and all persons whomsoever claiming to be or who may be lawfully determined to be my heirs at law, except as otherwise mentioned in this will.

"FOURTH: All of my estate is my separate property, having had a property settlement with my present wife, Rose Rice; there having been such settlement and understanding between myself and my present wife, I specifically declare that she is not to participate in any manner or form in my estate.

"FIFTH: All the rest, residue and remainder of my estate of whatever kind or nature or wherever situated, I give, devise and bequeath to my Executor hereinafter named.

"SIXTH: I hereby nominate and appoint Ernest P. Wellman, as sole Executor of my estate, and request that he act as such without bond. . . . "

At the time the will was executed said Kate Chase had been dead for several years.

Respondent was appointed executor on September 1, 1931, and for approximately six years thereafter, he corresponded with appellant, a nonresident, and the daughter and sole lineal descendant of said Kate Chase, deceased. Finally, without notice to appellant, said respondent sought a construction of the will contemporaneously with his petition for ratable distribution and approval of a third account current. Pursuant to such petition, the superior court sitting in probate entered its order on October 21, 1937, adjudging that by virtue of the terms of the will the legacy to Kate Chase had lapsed and appellant was not entitled to inherit in said estate, the said court distributing $3,000 among the legatees named in the will, respondent receiving the sum of $1500. These proceedings were given nothing more than the usual posting notice, notwithstanding that respondent (as alleged in the complaint) had repeatedly written appellant that "he was doing everything in his power to hasten the receipt by the plaintiff of her one-sixth share in said estate which he would distribute to her as soon as he obtained a court order to that effect; that she should not worry at not receiving her share because of the delays of court proceedings". Appellant further alleges that she had no actual notice or intimation that such proceeding had been instituted, nor of the time of the hearing, nor that said respondent was claiming her share had lapsed, and that she did not learn of said order or decree until February, 1938. Appellant also alleges that until her discovery of the fact that she had been deprived by said order of the share of the estate left to her mother, she had reposed great

trust and confidence in the honesty and integrity of respondent and had relied upon his advice and assurances that it was not necessary for her to retain counsel to protect her interests under the will; that she fully believed his promises and statements that she was going to receive a one-sixth interest, and at no time prior to the making of said order did she have any notice or suspicion that said respondent in his petition laid claim as residuary legatee to her share in said estate, consequently, she did not retain counsel to defend her rights and interests; that because of the fraud and deception on the part of respondent, she was prevented from contesting the claim of respondent to her share of said estate; was lulled into a sense of security and was thereby prevented from being present at the hearing, of making an appearance therein, or of presenting a defense thereto; that said order of ratable distribution was not the result of an adversary trial, but that all the proceedings therein and leading up thereto were *ex parte,* so far as this appellant was concerned, and the fraud and deceit of respondent were imposed with the intent to induce appellant to permit the order to be made as entered and with intent to allow the probate court to be induced and mislead into making said order, contrary to the laws and decisions of this state. It is also alleged that immediately upon discovering such fraud, appellant at once set about retaining an attorney to recover her share in said estate; that her husband had recently died and because of ill-health she was compelled to leave her home in the State of New Hampshire and reside in Florida; that she was in Florida at the time she discovered the fraud, as well as at the time the application for ratable distribution was instituted and at the time the court ordered such distribution; that consequently and because of the fact that her financial means were limited, she was compelled to correspond at length with her attorney in New Hampshire before the latter could effect a retainer of counsel in California; and that the delay in filing the instant action was caused solely because of the difficulty in retaining counsel, and not because of neglect or lack of due diligence on her part. Further, that no appeal was or can be taken from said order of ratable distribution and appellant has no remedy at law or in equity to maintain her rights in said estate except by the instant action.

Appellant then prays that the order of ratable distribution be vacated and set aside in so far as it decrees that the legacy to Kate Chase has lapsed and distributes the same to respondent Wellman, and that the proportion of said estate so distributed be declared to be the property of appellant and distributed to her; that respondent Wellman be declared to be a trustee of the share so awarded to him as the lapsed legacy of Kate Chase, and that he forthwith pay the same over to appellant; that hereafter under any decrees or orders, either ratable or final, that it be adjudged that the share of the estate of Mark H. Rice, deceased, willed to Kate Chase be distributed to appellant.

Respondent interposed a demurrer to the aforesaid complaint, which was sustained without leave to amend. From the judgment of dismissal which was thereafter entered this appeal is prosecuted.

Respondent claims in effect, (1) that appellant has no interest in the estate, having been deprived thereof by the disinheritance clause in the will; (2) that the probate court has concluded her interest by its order construing the will; and (3) that the complaint does not state facts sufficient to warrant a reconsideration of matters not originally presented to the court sitting in probate.

Appellant urges that she neither claims as an heir at law of testator, nor that she takes by inheritance from him; that she bases her right upon section 1310 of the Civil Code, now section 92 of the Probate Code, i. e., that she is a statutory legatee taking by substitution for her mother. Also, appellant contends that a court of equity has jurisdiction to review the order adjudging that the devise to her mother had lapsed, for the reason that the conduct of respondent, whereby she was denied her day in court and deprived of her right to present a defense to the petition for ratable distribution and construction of the will, constitutes extrinsic fraud.

The case is presented upon the question of the correctness of the order sustaining respondent's demurrer, consequently the facts alleged in the complaint must be accepted as true, at least for the purpose of the present argument. Assuming them to be true, does the complaint herein state facts sufficient to entitle appellant to the interposition of the aid of a court of equity to avoid the effects of the order of the probate court already made and entered? The claim of ap-

pellant that she is entitled to such aid is predicated upon the fraud and deceit practiced upon her by respondent, who was the executor, as well as a residuary legatee under the will. Furthermore, she admits that the allegations of her complaint were drawn to conform to the facts and holding in the case of *Caldwell* v. *Taylor,* 218 Cal. 471 [23 Pac. (2d) 758, 88 A. L. R. 1194], which she cites in support of her right to the aid of a court of equity.

In the cited case it was held that the fraud practiced by a beneficiary under a will upon the testator's son in making misrepresentations as to her marital status before and at the time of her marriage to testator, and as to her identity and character, thereby preventing the son's discovery of the real facts which would enable him to fully and properly contest the will, constituted extrinsic fraud sufficient to warrant the aid of equity. It was there stated at page 475 : "The jurisdiction of equity to afford appropriate relief from judgments generally and from orders and decrees in probate proceedings upon a showing of proper circumstances is well settled. (*Bacon* v. *Bacon,* 150 Cal. 477 [89 Pac. 317]; *Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201 [92 Pac. 184].) It has been specifically held that equitable relief may be granted against orders and decrees of a probate court, including a decree of distribution, and a decree probating a will. (*Estate of Ross,* 180 Cal. 651 [182 Pac. 752]; *Nicholson* v. *Leatham,* 28 Cal. App. 597 [153 Pac. 965, 155 Pac. 98]; *Bacon* v. *Bacon, supra.*) Since the probate of a will is a matter exclusively within the jurisdiction of the probate court, equity may not set aside the probate, but it may declare the beneficiary a trustee for those who have been defrauded. (Citing authorities.) And such character of relief is common. The judgment, order or decree from the effect of which relief is sought cannot constitute a bar to equitable relief. A proceeding for equitable relief is not a collateral attack and since its sole aim is to avoid the effect of said judgment, the doctrine of *res judicata* can have no application to such judgment. (*Bacon* v. *Bacon, supra; Campbell-Kawannanakoa* v. *Campbell, supra.*) . . . In *United States* v. *Throckmorton, supra,* (98 U. S. 61, 25 L. Ed. 93), the court stated that the cases where such relief could be granted are those in which 'by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of

the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud and deception practiced on him by his opponent, as by keeping him away from court, a false promise of compromise; or when the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff . . . —these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree and open the case for a new and fair hearing. (Citing authorities.) In all these cases, and many others which have been examined, relief has been granted on the ground that by some fraud *practiced directly upon the party seeking relief* against the judgment or decree that party has been prevented from presenting *all* of his case to the court.' (Italics ours.) This definition has become the well recognized and standard definition of extrinsic fraud. . . . And in *Clavey* v. *Loney*, 80 Cal. App. 20 [251 Pac. 232, 234], the court held the fact that by mistake an entire interest in property was by decree of distribution distributed to one entitled only to a fractional interest therein would not, in the absence of extrinsic fraud, warrant equitable relief. The court there stated that 'the extrinsic fraud which alone will warrant a court of equity in setting aside a judgment or decree consists of such fraud as prevents a real trial of the issues involved in the case, like conduct which prevents the injured party from receiving notice of the action or which causes the absence of necessary witnesses'.

"It also seems to be the rule that the fraud alleged must not be the fraud which is in effect the issue in controversy, the fraud upon which the cause of action in the former suit was based. In other words, the rule awarding equitable relief cannot be held to include such frauds as could have been relieved by the probate court itself by refusing probate, where the injured party had actual notice of the probate proceedings in time to make his contest and was not prevented from so doing by some fraud of the other party. . . . It is apparent from the foregoing discussion that the issue of fraud practiced upon the testator which was the issue involved in the contest of the probate of the will (although in fact the case was decided upon the issue of whether or not the contest had been filed within the statutory time allowed) is forever foreclosed from

further consideration *unless it be successfully established by plaintiff that by a different and distinct fraud practiced directly upon him by his opponent he was prevented from presenting all of his case to the court.''* (Emphasis added.)

 It therefore appears that the main requirement to establish extrinsic fraud is that the unsuccessful party was prevented by his adversary from presenting *all* of his case to the court. One of the examples given is that of a party who is prevented from appearing in court. From the allegations of the complaint in the instant case, if true, it is apparent that the fraud and deceit of respondent prevented appellant from either appearing in court or presenting her side of the controversy. That this constitutes extrinsic fraud is established by the cited case of *Caldwell* v. *Taylor, supra,* consequently, appellant stated a cause of action for the intervention of a court of equity.

 With respect to respondent's argument that appellant was deprived of any interest in the estate by reason of the disinheritance clause contained in the will, hereinbefore set out, it should be noted that appellant does not base her claim to an interest in the estate as an heir at law of testator, but rather upon her status as a lineal descendant of Kate Chase, under the provisions of section 92 of the Probate Code, to wit:

''If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute another in his place; *except that when any estate is devised or bequeathed to any kindred of testator,* and the devisee or legatee dies before the testator, leaving lineal descendants, or *is dead at the time the will is executed, but leaves lineal descendants surviving the testator, such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he* survived the testator.'' (Italics added.)

Appellant is the daughter and sole lineal descendant of Kate Chase, a cousin of testator, who was deceased at the time testator executed his will leaving her one-sixth interest in his estate, and consequently appellant takes such interest under the provisions of the statute in the same manner as her mother would have done had she survived the testator, i. e., as a devisee and legatee under the will.

In *Estate of Pew,* 10 Cal. App. (2d) 41 [50 Pac. (2d) 1045], it is held that the right of a son of a predeceased legatee to take a legacy flows from section 92 of the Probate Code and not through the estate of his father, and the court, in construing the will, is bound to read into it the provisions of said section. In said last cited case the court stated, quoting from *Denise's Exrs.* v. *Denise,* 37 N. J. Eq. 163, 168: " 'The statute-made legatee is a mere substitute; he is thrust, by force of the statute, in the place made vacant by the death of the legatee named in the will, and is given what, but for his death, would have gone to the primary legatee. . . . It (the statute) is in derogation of the right of testamentary disposition; it makes persons legatees not designated such by the testator. . . . Statutes must always be construed so as to give effect to the intent and object of the legislature, and this one . . . should be held to put the substituted legatee in the place of his parent, and to give him just what his parent would have been entitled to. . . . He must take in the same manner that his parent would have taken.' "

It is well-settled law that property may be acquired in two ways: 1. By operation of law, i. e., by descent, which is the title, whereby on the death of an ancestor, one acquires his estate by right of representation as his heir at law; and 2. By purchase, which includes all other modes of acquisition.

An estate acquired by inheritance is one that descends upon the heir and is cast upon him by the single operation of law. A devisee does not inherit, in the technical sense of the term, but takes by purchase. (*Estate of Donahue,* 36 Cal. 329.)

From this it is apparent that appellant's interest in the estate herein is acquired by virtue of section 92 of the Probate Code, and not as an heir at law of testator.

Since the order which appellant seeks to have vacated was made upon petition for approval of a third account current, it must be assumed that the estate of testator is still pending in the probate court, and that any intermediate orders made in course of administration do not become strictly final until the decree of final distribution is entered.

While the question is not raised herein, there is respectable authority to the effect that a bequest to a person designated, as here, "my Executor hereinafter named", is presumed to

be given to him in his official character as executor rather than to him individually. (104 A. L. R. 114, 115.)

It follows from what has been stated that the lower court was in error in its conclusion that the complaint herein failed to state a cause of action. Therefore, the judgment is reversed, with orders to the trial court to overrule the demurrer of respondent.

Doran, J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 8, 1940.